FILED

2014 Oct-20  PM 03:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| **KRIS BATTLE, RUSSELL BLAKELY, RODNEY BRIDGES, NICHOLOS BUTTS, TANNER CARDEN, DOUGLAS FERREN, ROBERT FIELD, RANDALL HILL, BRET HUGHES, EARNEST JACKSON, TYRONE KELLEY, CARL KENNEDY, ELLON LA MOTHE, SCOTT MANZO, ANDREW MITCHELL, JOSE MORALES, RICARDO NEWMAN, JAYSON PORTER, DUSTY PRESTRIDGE, JAMES RENKL, KENNETH ROGERS, JONATHAN SUMMERLIN, MARK YATES, GENO MARINE, and AUSTIN CARPENTER,** | **Case No.** |
| **Plaintiffs,** | |
| **v.** | |
| **DIRECTV, INC. and DIRECTV, LLC,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiffs Kris Battle, Russell Blakely, Rodney Bridges, Nicholos Butts, Tanner Carden, Douglas Ferren, Robert Field, Randall Hill, Bret Hughes, Earnest Jackson, Tyrone Kelley, Carl Kennedy, Ellon La Mothe, Scott Manzo, Andrew Mitchell, Jose Morales, Ricardo Newman, Jayson Porter, Dusty Prestridge, James Renkl, Kenneth Rogers, Jonathan Summerlin, Mark Yates, Geno Marine, and Austin Carpenter by and through their undersigned counsel, for their individual complaints against DIRECTV, Inc. and DIRECTV LLC (together, "DIRECTV" or "Defendants"); hereby state as follows:

## NATURE OF SUIT

1.     DIRECTV—the largest provider of satellite television services in the United States—is responsible for a far reaching "fissured employment"[1] scheme.  In order to expand and service its customer base (topping more than 20 million domestic subscribers), DIRECTV has engaged tens of thousands of technicians—including each of the Plaintiffs in this case—to install and repair its satellite systems. Although DIRECTV requires these technicians to drive a DIRECTV-branded vehicle, wear a DIRECTV uniform, and perform their work according to DIRECTV's exacting policies and procedures, DIRECTV disclaims any legal relationship with these workers, tagging them instead as "independent contractors" or employees of subordinate entities. But fortunately for these workers, it is the economic reality of the relationship—not DIRECTV's self-serving labels—that controls whether Plaintiffs meet the definition (among the broadest ever legislated) of an "employee" under the Fair Labor Standards Act ("FLSA").

2.     Plaintiffs' claims squarely challenge this dangerous trend, and are not the first to do so. The U.S. Department of Labor ("DOL") has made a priority of investigating and exposing multi-party business arrangements that shirk compliance with the FLSA.  *See* http://wage-hour.net/post/2012/09/25/Fissured-Industry-Enforcement-Efforts-Continue.aspx (last visited Oct. 9, 2014).  The DOL's Misclassification Initiative, launched under Vice President Biden's Middle Class Task Force, is aggressively combating this pervasive issue in order to restore rights denied

---

[1] Fissured employment describes the practice of a large company attempting to shed its role as a direct employer and purporting to disassociate itself from the workers responsible for its products (albeit maintaining tight control over the method, manner, quantity, and quality of production). The practice of outsourcing an employer's responsibilities and obligations to subordinate entities and subcontractors is highly profitable for companies like DIRECTV, but results in stagnation of wages and benefits and causes rampant violations of wage-and-hour laws. *See e.g.*, David Weil, *The Fissured Workplace: Why Work Became So Bad for So Many and What Can Be Done to Improve It* (Harvard Univ. Press, Feb. 3, 2014);  David Weil, *Enforcing Labour Standards in Fissured Workplaces: The US Experience*, 22 Econ. & Lab. Rel. Rev. 2, at 33-54 (July 2011).

to individuals.[2]   In September 2011, then-Secretary of Labor Hilda L. Solis announced the signing of a Memorandum of Understanding between the DOL and the Internal Revenue Service (IRS), under which the agencies combine resources and share information to reduce the incidence of misclassification of employees, to help reduce the tax gap, and to improve compliance with federal labor laws.  The DOL's Wage and Hour Division is also partnering with individual states, including Alabama, whose workers are being subjected to this practice.[3]

3.      The individual Plaintiffs joined herein intend to prove in this litigation that they are legally employed by DIRECTV, and are entitled to the overtime and minimum wage protections of the FLSA.

## JURISDICTION AND VENUE

4.      The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiffs' individual FLSA claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district and Defendants are each subject to personal jurisdiction in this district.

## PARTIES

---

[2] "The misclassification of employees as something else, such as independent contractors, presents a serious problem, as these employees often are denied access to critical benefits and protections—such as family and medical leave, overtime compensation, minimum wage pay and Unemployment Insurance—to which they are entitled. In addition, misclassification can create economic pressure for law-abiding business owners, who often struggle to compete with those who are skirting the law. Employee misclassification also generates substantial losses for state Unemployment Insurance and workers' compensation funds." *See* http://www.dol.gov/opa/media/press/whd/WHD20120257.htm (last visited Oct. 9, 2014); *see generally*, DOL Misclassification Initiative, available at http://www.dol.gov/whd/workers/misclassification/ (last visited Oct. 9, 2014).

[3] *See, e.g.*, DOL Misclassification Initiative, *available at* http://www.dol.gov/whd/workers/misclassification/#stateDetails (last visited Oct. 14, 2014).

6.      Kris Battle is an individual residing in Mobile, Alabama.

7.      Russell Blakely is an individual residing in Quitman, Mississippi.

8.      Rodney Bridges is an individual residing in Hoover, Alabama.

9.      Nicholas Butts is an individual residing in Altoona, Alabama.

10.     Tanner Carden is an individual residing in Huntsville, Alabama.

11.     Douglas Ferren is an individual residing in Clarksville, Tennessee.

12.     Robert Field is an individual residing in Mobile, Alabama.

13.     Randall Hill is an individual residing in Town Creek, Alabama.

14.     Bret Hughes is an individual residing in McCalla, Alabama.

15.     Earnest Jackson is an individual residing in Montgomery, Alabama.

16.     Tyrone Kelley is an individual residing in Montgomery, Alabama.

17.     Carl Kennedy is an individual residing in Mobile, Alabama.

18.     Ellon La Mothe is an individual residing in Mobile, Alabama.

19.     Scott Manzo is an individual residing in Millbrook, Alabama.

20.     Andrew Mitchell is an individual residing in Mobile, Alabama.

21.     Jose Morales is an individual residing in Deatsville, Alabama.

22.     Ricardo Newman is an individual residing in Mobile, Alabama.

23.     Jayson Porter is an individual residing in Albertville, Alabama.

24.     Dusty Prestridge is an individual residing in Tulsa, Oklahoma.

25.     James Renkl is an individual residing in Mobile, Alabama.

26.     Kenneth Rogers is an individual residing in Iron City, Tennessee.

27.     Jonathan Summerlin is an individual residing in Flowood, Mississippi.

28.     Mark Yates is an individual residing in Morris, Alabama.

29.    Geno Marine is an individual residing in Selma, Alabama.

30.    Austin Carpenter is an individual residing in Vestavia Hills, Alabama.

31.    DIRECTV, Inc. is a Delaware corporation with its principal place of business in El Segundo, California. DIRECTV, Inc. does business as DIRECTV Home Services. In December 2011, DIRECTV, Inc. merged with another DIRECTV entity, DIRECTV Operations, LLC. The resulting entity is known as DIRECTV, LLC, which is a Delaware corporation with its principal place of business in El Segundo, California.

32.    All Plaintiffs performed work for DIRECTV in Alabama.

33.    All Defendants do business or have done business in Alabama.

## COMMON FACTUAL ALLEGATIONS

### DIRECTV's Fissured Employment Scheme: The Provider Network

34.    Plaintiffs' principal job duty as technicians was to install and repair DIRECTV satellite television service.

35.    DIRECTV oversees a network of Providers (the "Provider Network") who supply DIRECTV this workforce of technicians, either by serving as their ostensible employer, or by "subcontracting" with technicians dubbed "independent contractors."

36.    DIRECTV conceived of, formed, and manages DIRECTV's Provider Network. DIRECTV operates its Provider Network nationwide from its headquarters in El Segundo, California, reaching each state where Plaintiffs work.

37.    The Provider Network is comprised of principal intermediaries that DIRECTV dubs its Home Service Providers ("HSPs"), secondary intermediaries deemed "Secondary Providers," as well as a patchwork of largely captive entities that are generally referred to as subcontractors.

38.     Upon information and belief, at all relevant times, DIRECTV was the primary, if not the only, client of the Providers and was the source of substantially all of each Provider's income.

39.     During the relevant time period, and as alleged in more detail *infra*, many HSPs were subsumed by DIRECTV through a series of mergers and acquisitions, leaving, for purposes relevant to the instant cases, only HSPs DirectSat, MasTec, and Multiband.

40.     DIRECTV controls the Provider Network through a variety of means including detailed agreements known as Home Services Provider Agreements, Services Provider Agreements, and Secondary Provider Agreement of Equipment Installation and Service (collectively referred to herein as the "Provider Agreements"). The Provider Agreements establish parallel—indeed, effectively identical—business relationships between DIRECTV and each HSP and subcontractor. The salient provisions of each Provider Agreement contain the same policies, procedures, performance standards, and payment method requirements.

41.     The Provider Agreements specify DIRECTV's mandatory policies and procedures. And they obligate DIRECTV's intermediaries to hand them down to the technicians.

42.     The Provider Agreements enable DIRECTV to control nearly every facet of the technician's work, down to the "DIRECTV" shirts they are required to wear and the "DIRECTV" ID card they must show customers.  DIRECTV assigns each technician a scope of work described in a Work Order that DIRECTV itself delivers to each technician via a centralized computer software system that DIRECTV controls.   DIRECTV mandates particularized methods and standards of installation to assure DIRECTV's equipment is installed according to the dictates of DIRECTV's policies and procedures. As a consequence, each

technician's essential job duties are virtually identical no matter where performed and no matter which intermediary the technician is ostensibly working for.

43.     Plaintiffs typically started their workdays after receiving daily work schedules assigned through DIRECTV's dispatching systems. DIRECTV used a database program known as SIEBEL to coordinate the assignment of particular work orders to technicians using each technician's unique "Tech ID Number."

44.     After receiving their daily work schedules, Plaintiffs typically called the customer contact for each of their assigned jobs to confirm the timeframe within which the technician expected to arrive at the customer's home. Plaintiffs then traveled to their first assigned job and thereafter continued to complete the jobs assigned by Defendants in the prescribed order on the daily work schedule. Upon arriving at each job site, Plaintiffs were required to check-in by telephone with DIRECTV via its dispatching system. At the end of an assigned job, Plaintiffs were required to report to DIRECTV that the installation was complete and, thereafter, worked directly with DIRECTV employees to activate the customer's service.

45.     When performing DIRECTV's work, Plaintiffs were required by Defendants to wear a uniform with DIRECTV insignia on it. Additionally, Plaintiffs were required to display DIRECTV insignia on vehicles driven to customers' homes for installations. Plaintiffs were required to purchase these uniforms and insignia, typically from Defendants.

46.     Although DIRECTV controls nearly every aspect of the technicians' work, Defendants insist that the technicians are not employees of DIRECTV, and often claim that they are not employees at all, rather that they are "independent contractors."

47.     Plaintiffs will show that the Provider Network is purposefully designed to exercise the right of control over its technician corps while avoiding the responsibility of complying with the requirements of the FLSA.

**DIRECTV's Workforce Consolidation: Acquisition of Providers by Defendants**

48.     DIRECTV's control over its purportedly independent provider partners is integral to its fissured employment scheme. So much so that DIRECTV regularly infuses these partners with what it labels internally as "extraordinary advance payments" in order to keep their dependent operations afloat while preserving an outward appearance of independence. When litigation or other circumstances make the "independent" relationship a negative for DIRECTV, DIRECTV simply absorbs these entities by acquisition.

49.     The absorption by DIRECTV is seamless, simply a resetting of titles without the functional modifications that normally accompany an arm's length acquisition. To date, there are only three "independent" HSPs still in operation. Since DIRECTV developed its HSP Network, DIRECTV or one of these three remaining HSPs has purchased at least thirteen prior HSPs.[4] Below is a description of the prior HSPs for which the Plaintiffs technicians worked and how those HSPs were ultimately acquired by DIRECTV.

**DTV Home Services II, LLC**

50.     Upon information and belief, DIRECTV acquired DTV Home Services II, LLC, including all of its facilities. After the acquisition, DIRECTV conducted business out of DTV Home Services II, LLC's locations, and personnel from DTV Home Services II, LLC worked for DIRECTV. Many of DTV Home Services II, LLC's employees were hired by DIRECTV.

---

[4] These include AeroSat, Bruister, Bluegrass Satellite and Security, ConnecTV, Directech NE, Directech SW, DTV Home Services II, LLC, Halsted Communications, Ironwood Communications, JP&D Digital Satellite, Michigan Microtech, Mountain Satellite and Security, and Skylink.

51.    Upon information and belief, working conditions for installation technicians who worked for DTV Home Services II, LLC remained substantially the same after DIRECTV acquired DTV Home Services II, LLC. Likewise, technicians, including Plaintiffs, had substantially the same job(s) after DIRECTV acquired DTV Home Services II, LLC. There were no broad changes to job functions, job titles, job responsibilities, and/or supervisors, and technicians' pay remained the same.

### The Economic Reality: DIRECTV and its Provider Network Employ the Technicians

52.    DIRECTV exerts significant control over the Providers and Plaintiffs regarding the essential terms and conditions of Plaintiffs' employment.

53.    In fact, DIRECTV is the primary, if not the exclusive, client of the Providers, and accounts for the majority, if not all, of their revenue.

54.    Defendants are, and were at all times relevant herein, in the business of, among other things, providing satellite television service to businesses and consumers. Installation and repair of satellite dishes, receivers, and related equipment is an integral part of DIRECTV's business.

55.    Although hiring is generally done at the Providers' level, DIRECTV controls the details of Plaintiffs' day-to-day work.

56.    Through the Providers, DIRECTV exercises significant control over Plaintiffs' daily work lives, including, but not limited to, control over what work Plaintiffs performed, where that work was performed, when that work was performed, and how that work was performed.

57.     Through the Providers, DIRECTV also determined whether Plaintiffs' work merited compensation, including setting the rate of pay to the Providers for the Plaintiffs' work. Providers then administered payroll and provided Plaintiffs with their paychecks.

58.     DIRECTV, through the Providers, exerted control over Plaintiffs sufficient to establish that they employed Plaintiffs. DIRECTV and the Providers constitute employers subject to liability under the FLSA.

59.     DIRECTV required Plaintiffs to hold themselves out as agents of DIRECTV.

60.     DIRECTV promulgates detailed instructions for how installations are to be completed. Plaintiffs received these instructions and performed the work as DIRECTV required. Plaintiffs were not given meaningful discretion in how they performed installations.

61.     DIRECTV publishes training materials that technicians such as Plaintiffs are required to review.

62.     DIRECTV requires that all technicians obtain a certification from the Satellite Broadcasting & Communications Association ("SBCA") before that technician may be assigned DIRECTV work orders. This requirement allows DIRECTV to mandate certain training for all technicians.

63.     DIRECTV utilizes a network of quality control personnel and field managers to oversee the work performed by Plaintiffs.

64.     DIRECTV and Providers' quality control personnel reviewed Plaintiffs' work, and Plaintiffs were subject to chargebacks and/or rollbacks based on those reviews.

65.     Defendants are each engaged in interstate commerce and, upon information and belief, Defendants each gross more than Five Hundred Thousand Dollars in revenue per year.

66.     The net effect of Defendants' policies and practices, instituted by DIRECTV, is that Defendants willfully fail to pay minimum wage and overtime compensation to Plaintiffs, and willfully fail to keep accurate time records in order to save payroll costs.

**The Piece-Rate System: DIRECTV's Unlawful Payment Scheme**

67.     As with other aspects of Plaintiffs' work, DIRECTV effectively controlled Plaintiffs' pay through the common policies and practices mandated in its Provider Agreements.

68.     Every Plaintiff was paid pursuant to the piece-rate payment scheme that is utilized throughout DIRECTV's network.

69.     There was no contract, memorandum, or other document between Plaintiffs and Defendants properly memorializing or explaining this pay system.

70.     Under this system, Plaintiffs were not paid for all hours they worked for Defendants. Rather, they were paid on a per-task (a/k/a piece rate) basis for satisfactorily completing a DIRECTV-approved satellite installation. The piece-rate system only pays technicians for certain enumerated "productive" tasks but fails to compensate technicians for all necessary work they perform.

71.     In addition to the certain tasks DIRECTV designated as compensable, Plaintiffs performed other work each week during the relevant time period for Defendants, such as assembling satellite dishes, driving to and between job assignments, reviewing and receiving schedules, calling customers to confirm installations, obtaining required supplies, assisting other technicians with installations, performing required customer educations, contacting DIRECTV to report in or activate service, working on installations that were not completed, and working on "rollback" installations where Plaintiffs had to return and perform additional work on installations previously completed.

72.     Plaintiffs were not paid for these integral and indispensable tasks that were necessary to their principal activity of installing and repairing DIRECTV satellite television service.

73.     Defendants did not pay Plaintiffs' wages free and clear. Rather, Plaintiffs were subjected to "chargebacks" wherein Defendants would deduct amounts from Plaintiffs' pay if there were issues with an installation, or questions from the customer, generally up to 90 days after the customer's service was activated. The chargeback would occur for a variety of reasons, many of which were out of Plaintiffs' control, including, for example, faulty equipment, improper installation, customer calls regarding how to operate their remote control, or a customer's failure to give greater than a 95% satisfaction rating for the services provided by the technician.

74.     In addition to chargebacks, those technicians who were misclassified as independent contractors were also required to purchase supplies necessary to perform installations, such as screws, poles, concrete, and cables. Nor were these independent contractors paid an overtime premium for work done beyond 40 hours in a workweek.

75.     The required purchase of these supplies for Defendants' financial benefit reduced the wages of these technicians, including overtime pay.

76.     Plaintiffs routinely worked more than 40 hours per week for Defendants, as alleged in more detail below.

77.     Plaintiffs were not paid the overtime premium required by applicable law for work done beyond 40 hours in a given workweek.

78.     Defendants' policy and practice of imposing "chargebacks," failing to compensate Plaintiffs for all hours worked, and failing to reimburse Plaintiffs' necessary business expenses

resulted in Plaintiffs routinely working more than forty hours in a work week while being denied overtime pay and being subjected to an effective wage rate below that required by applicable law.

79.    Plaintiffs intend to prove that Defendants' piece-rate pay system constitutes an effort to deliberately deny Plaintiffs earned wages and overtime compensation in violation of the FLSA.

## LITIGATION HISTORY

### *Lang v. DIRECTV*

80.    A number of Plaintiffs in this case, including Kris Battle, Russell Blakely, Rodney Bridges, Nicholos Butts, Tanner Carden, Robert Field, Randall Hill, Bret Hughes, Earnest Jackson, Tyrone Kelley, Carl Kennedy, Ellon La Mothe, Scott Manzo, Andrew Mitchell, Jose Morales, Ricardo Newman, Jayson Porter, Dusty Prestridge, James Renkl, Kenneth Rogers, and Mark Yates, previously opted in to a conditionally certified FLSA action pending in the Eastern District of Louisiana styled *Lang v. DIRECTV, et al.*, No. 10-1085-NJB.  The *Lang* case was pending as a collective action until the court, on August 30, 2013, granted the parties' joint motion decertifying the class, dismissed the opt-in plaintiffs' claims without prejudice to pursue the individual claims raised herein, and ordered the statute of limitations for each opt-in plaintiff to continue to be tolled for 60 days from the date of the order. *Lang v. DIRECTV*, Case No. 10-1085-NJB (E.D. La.) (Docs. 466, 466-1).

### *Acfalle v. DIRECTV*

81.    Within the 60 days granted by the *Lang* court, Plaintiffs Kris Battle, Russell Blakely, Rodney Bridges, Nicholos Butts, Tanner Carden, Robert Field, Randall Hill, Bret Hughes, Earnest Jackson, Tyrone Kelley, Carl Kennedy, Ellon La Mothe, Scott Manzo, Andrew

Mitchell, Jose Morales, Ricardo Newman, Jayson Porter, Dusty Prestridge, James Renkl, Kenneth Rogers, Mark Yates, and also Douglas Ferren and Jonathan Summerlin, filed an action in the Central District of California on November 1, 2013. *Acfalle v. DirecTV*, Case No. 13-8108 ABC (Ex) (Doc. 1) (amended on December 23, 2013, by Doc. 9). On July 22, 2014, the court entered an order granting, in part, Defendants' Motions to Sever Claims of Plaintiffs. (Doc. 71) In that order, the court "dropped" 277 plaintiffs with FLSA-only claims, dismissing them without prejudice to refile their claims closer to their home states or where they were employed, that is, "where they performed their work." (Doc. 71, at 5, 8.)  The court tolled the statute of limitations for 90 days to permit Plaintiffs to refile their claims. (Doc. 71, at 8.)

82.    Within the 90 days granted by the *Acfalle* court, Plaintiffs Kris Battle, Russell Blakely, Rodney Bridges, Nicholas Butts, Tanner Carden, Douglas Ferren, Robert Field, Randall Hill, Bret Hughes, Earnest Jackson, Tyrone Kelley, Carl Kennedy, Ellon La Mothe, Scott Manzo, Andrew Mitchell, Jose Morales, Ricardo Newman, Jayson Porter, Dusty Prestridge, James Renkl, Kenneth Rogers, Jonathan Summerlin, and Mark Yates filed the instant Complaint, joining their individual claims against Defendants.

### Arnold v. DIRECTV

83.    Plaintiff Geno Marine previously filed a consent to become a party plaintiff in *Arnold v. DIRECTV*, No. 10-0352-JAR, originally filed on March 2, 2010, pending in the Eastern District of Missouri. Pursuant to a Proposed Case Management Plan (Doc. 200) and Amended Case Management Order (Doc. 216), the court redefined the claims into subclasses (Doc. 220, Second Amended Complaint) and entered an order which, in pertinent part, directed Plaintiffs to decertify and dismiss the claims of certain opt-in plaintiffs, including Geno Marine, without prejudice to pursue the individual claims raised herein, and ordered the statute of

limitations for each opt-in plaintiff to continue to be tolled for 90 days from the date of the order. *Arnold v. DIRECTV*, Case No. 10-0325-JAR (E.D. Mo.) (Doc. 221, Notice of Voluntary Decertification).

84.     Within the 90 days granted by the *Arnold* court, Plaintiff Geno Marine joined their individual claims in this action.

**PLAINTIFFS' CLAIMS**

**Kris Battle**

85.     Plaintiff Kris Battle is an individual residing in the state of Alabama. From approximately 2010 to September 2013, Kris Battle routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

86.     In fact, Kris Battle spent approximately 50 hours per week performing tasks for the benefit of Defendants, many unpaid.

87.     Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Kris Battle for all hours worked, and failing to reimburse Kris Battle's necessary business expenses) resulted in Kris Battle being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

88.     Kris Battle brings claims against DIRECTV.

**Russell Blakely**

89.     Plaintiff Russell Blakely is an individual residing in the state of Mississippi. Between approximately 2001 and 2011, Russell Blakely routinely worked more than 40 hours per week as a technician for DIRECTV, MasTec, and DTV Home Services II, LLC in the states of Alabama and Mississippi, and was unlawfully deprived of overtime compensation.

90.     In fact, Russell Blakely spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

91.     Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Russell Blakely for all hours worked, and failing to reimburse Russell Blakely's necessary business expenses) resulted in Russell Blakely being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

92.     Russell Blakely brings claims against DIRECTV.

**Rodney Bridges**

93.     Plaintiff Rodney Bridges is an individual residing in the state of Alabama. Between approximately April 2010 and April 2012, Rodney Bridges routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

94.     In fact, Rodney Bridges spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

95.     Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Rodney Bridges for all hours worked, and failing to reimburse Rodney Bridges' necessary business expenses) resulted in Rodney Bridges being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

96.     Rodney Bridges brings claims against DIRECTV.

**Nicholos Butts**

97.    Plaintiff Nicholos Butts is an individual residing in the state of Alabama. Between approximately 2009 and 2010, Nicholos Butts routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

98.    In fact, Nicholos Butts spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

99.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Nicholos Butts for all hours worked, and failing to reimburse Nicholos Butts' necessary business expenses) resulted in Nicholos Butts being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

100.    Nicholos Butts brings claims against DIRECTV.

**Tanner Carden**

101.    Plaintiff Tanner Carden is an individual residing in the state of Alabama. Between approximately July 2010 and November 2010, Tanner Carden routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

102.    In fact, Tanner Carden spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

103.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Tanner Carden for all hours worked, and failing to reimburse Tanner Carden's necessary business expenses) resulted in Tanner Carden being

routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

104.    Tanner Carden brings claims against DIRECTV.

**Douglas Ferren**

105.    Plaintiff Douglas Ferren is an individual residing in the state of Tennessee. Between approximately October 2011 and January 2012, Douglas Ferren routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

106.    In fact, Douglas Ferren spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

107.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Douglas Ferren for all hours worked, and failing to reimburse Douglas Ferren's necessary business expenses) resulted in Douglas Ferren being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

108.    Douglas Ferren brings claims against DIRECTV.

**Robert Field, Jr.**

109.    Plaintiff Robert Field, Jr. is an individual residing in the state of Alabama. Between approximately 2008 and 2010, Robert Field, Jr. routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

110.    In fact, Robert Field, Jr. spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

111.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Robert Field, Jr. for all hours worked, and failing to reimburse Robert Field, Jr.'s necessary business expenses) resulted in Robert Field, Jr. being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

112.    Robert Field, Jr. brings claims against DIRECTV.

**Randall Hill**

113.    Plaintiff Randall Hill is an individual residing in the state of Alabama. Between approximately 2011 and July 2012, Randall Hill routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

114.    In fact, Randall Hill spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

115.    Defendants' employment policies and practices detailed herein ((*i.e.*, imposing "chargebacks," failing to compensate Randall Hill for all hours worked, and failing to reimburse Randall Hill's necessary business expenses) resulted in Randall Hill being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

116.    Randall Hill brings claims against DIRECTV.

**Bret Hughes**

117.    Plaintiff Bret Hughes is an individual residing in the state of Alabama. From approximately June 2008 and February 2013, Bret Hughes routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC primarily in the state

of Alabama, and also in Georgia, Florida, North Carolina, and South Carolina, and was unlawfully deprived of overtime compensation.

118.    In fact, Bret Hughes spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

119.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Bret Hughes for all hours worked, and failing to reimburse Bret Hughes's necessary business expenses) resulted in Bret Hughes being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

120.    Bret Hughes brings claims against DIRECTV.

**Earnest Jackson, Jr.**

121.    Plaintiff Earnest Jackson, Jr. is an individual residing in the state of Alabama. Between approximately August 2010 and May 2011, Earnest Jackson, Jr. routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

122.    In fact, Earnest Jackson, Jr. spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

123.    Defendants' employment policies and practices detailed herein (*i.e.*, failing to compensate Earnest Jackson, Jr. for all hours worked and failing to reimburse Earnest Jackson, Jr.'s necessary business expenses) resulted in Earnest Jackson, Jr. being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

124.    Earnest Jackson, Jr. brings claims against DIRECTV.

**Tyrone Kelley**

125.    Plaintiff Tyrone Kelley is an individual residing in the state of Alabama. Between approximately September 2010 and November 2011, Tyrone Kelley routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

126.    In fact, Tyrone Kelley spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

127.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Tyrone Kelley for all hours worked, and failing to reimburse Tyrone Kelley's necessary business expenses) resulted in Tyrone Kelley being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

128.    Tyrone Kelley brings claims against DIRECTV.

**Carl Kennedy**

129.    Plaintiff Carl Kennedy is an individual residing in the state of Alabama. Between approximately April 2007 and January 2013, Carl Kennedy routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC primarily in the state of Alabama, and also in Florida, and was unlawfully deprived of overtime compensation.

130.    In fact, Carl Kennedy spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

131.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Carl Kennedy for all hours worked, and failing to reimburse Carl Kennedy's necessary business expenses) resulted in Carl Kennedy being

routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

132.    Carl Kennedy brings claims against DIRECTV.

**Ellon La Mothe**

133.    Plaintiff Ellon La Mothe is an individual residing in the state of Alabama. Between approximately April 2009 and December 2012, Ellon La Mothe routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC primarily in the state of Alabama, and also in Florida and Mississippi, and was unlawfully deprived of overtime compensation.

134.    In fact, Ellon La Mothe spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

135.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Ellon La Mothe for all hours worked, and failing to reimburse Ellon La Mothe's necessary business expenses) resulted in Ellon La Mothe being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

136.    Ellon La Mothe brings claims against DIRECTV.

**Scott Manzo**

137.    Plaintiff Scott Manzo is an individual residing in the state of Alabama. Between approximately January 2012 and May 2012, Scott Manzo routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

138.    In fact, Scott Manzo spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

139.    Defendants' employment policies and practices detailed herein (*i.e.*, failing to compensate Scott Manzo for all hours worked and failing to reimburse Scott Manzo's necessary business expenses) resulted in Scott Manzo being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

140.    Scott Manzo brings claims against DIRECTV.

**Andrew Mitchell**

141.    Plaintiff Andrew Mitchell is an individual residing in the state of Alabama. Between approximately 2010 and 2013, Andrew Mitchell routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

142.    In fact, Andrew Mitchell spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

143.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Andrew Mitchell for all hours worked, and failing to reimburse Andrew Mitchell's necessary business expenses) resulted in Andrew Mitchell being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

144.    Andrew Mitchell brings claims against DIRECTV.

**Jose Morales**

145.    Plaintiff Jose Morales is an individual residing in the state of Alabama. Between approximately June 2010 and October 2011, Jose Morales routinely worked more than 40 hours

per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

146.    In fact, Jose Morales spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

147.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Jose Morales for all hours worked, and failing to reimburse Jose Morales' necessary business expenses) resulted in Jose Morales being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

148.    Jose Morales brings claims against DIRECTV.

**Ricardo Newman**

149.    Plaintiff Ricardo Newman is an individual residing in the state of Alabama. Between approximately August 2008 and June 2014, Ricardo Newman routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

150.    In fact, Ricardo Newman spent approximately 50 hours per week performing tasks for the benefit of Defendants, many unpaid.

151.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Ricardo Newman for all hours worked, and failing to reimburse Ricardo Newman's necessary business expenses) resulted in Ricardo Newman being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

152.    Ricardo Newman brings claims against DIRECTV.

**Jayson Porter**

153.    Plaintiff Jayson Porter is an individual residing in the state of Alabama. Between approximately 2007 and 2011, Jayson Porter routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

154.    In fact, Jayson Porter spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

155.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Jayson Porter for all hours worked, and failing to reimburse Jayson Porter's necessary business expenses) resulted in Jayson Porter being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

156.    Jayson Porter brings claims against DIRECTV.

**Dusty Prestridge**

157.    Plaintiff Dusty Prestridge is an individual residing in the state of Oklahoma. Between approximately June 2010 and January 2013, Dusty Prestridge routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC primarily in the state of Alabama, and also in Tennessee, Oklahoma, and Florida, and was unlawfully deprived of overtime compensation.

158.    In fact, Dusty Prestridge spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

159.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Dusty Prestridge for all hours worked, and failing to reimburse Dusty Prestridge's necessary business expenses) resulted in Dusty Prestridge being

routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

160.     Dusty Prestridge brings claims against DIRECTV.

**James Renkl**

161.     Plaintiff James Renkl is an individual residing in the state of Alabama. Between approximately June 2009 and August 2011, James Renkl routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC primarily in the state of Alabama, and also in Florida, and was unlawfully deprived of overtime compensation.

162.     In fact, James Renkl spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

163.     Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate James Renkl for all hours worked, and failing to reimburse James Renkl's necessary business expenses) resulted in James Renkl being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

164.     James Renkl brings claims against DIRECTV.

**Kenneth Rogers**

165.     Plaintiff Kenneth Rogers is an individual residing in the state of Tennessee. Between approximately 2009 to November 2013, Kenneth Rogers routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

166.     In fact, Kenneth Rogers spent approximately 52 hours per week performing tasks for the benefit of Defendants, many unpaid.

167.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Kenneth Rogers for all hours worked, and failing to reimburse Kenneth Rogers' necessary business expenses) resulted in Kenneth Rogers being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

168.    Kenneth Rogers brings claims against DIRECTV.

**Jonathan Summerlin**

169.    Plaintiff Jonathan Summerlin is an individual residing in the state of Mississippi. Between approximately 2010 and August 2013, Jonathan Summerlin routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC, in the state of Alabama, and was unlawfully deprived of overtime compensation.

170.    In fact, Jonathan Summerlin spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

171.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Jonathan Summerlin for all hours worked, and failing to reimburse Jonathan Summerlin's necessary business expenses) resulted in Jonathan Summerlin being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

172.    Jonathan Summerlin brings claims against DIRECTV.

**Mark Yates**

173.    Plaintiff Mark Yates is an individual residing in the state of Alabama. Between approximately 2006 and May 2012, Mark Yates routinely worked more than 40 hours per week

as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

174.    In fact, Mark Yates spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

175.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Mark Yates for all hours worked, and failing to reimburse Mark Yates' necessary business expenses) resulted in Mark Yates being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

176.    Mark Yates brings claims against DIRECTV.

**Geno Marine**

177.    Plaintiff Geno Marine is an individual residing in the state of Alabama. Between approximately 2011 and 2013, Geno Marine routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC, in the state of Alabama, and was unlawfully deprived of overtime compensation.

178.    In fact, Geno Marine spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

179.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Geno Marine for all hours worked, and failing to reimburse Geno Marine's necessary business expenses) resulted in Geno Marine being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

180.    Geno Marine brings claims against DIRECTV.

**Austin Carpenter**

181.    Plaintiff Austin Carpenter is an individual residing in the state of Alabama. Between approximately August 2013 and September 2014, Austin Carpenter routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Alabama, and was unlawfully deprived of overtime compensation.

182.    In fact, Austin Carpenter spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

183.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Austin Carpenter for all hours worked, and failing to reimburse Austin Carpenter's necessary business expenses) resulted in Austin Carpenter being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

184.    Austin Carpenter brings claims against DIRECTV.

<u>**COUNT I**</u>

**Violation of the Fair Labor Standards Act of 1938**

*By each Plaintiff individually against Plaintiff's previously identified joint-employer-Defendant(s)*

185.    Plaintiffs re-allege all allegations set forth above.

186.    At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

187.    The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

188.    The FLSA also regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 206(a).

189.    Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are enterprises engaged in interstate commerce and their employees are engaged in commerce.

190.    Defendants violated the FLSA by failing to pay all minimum wage and overtime wages due to Plaintiffs, failing to properly calculate Plaintiffs' regular rate of pay for determining the overtime premium pay owed, and improperly deducting money from Plaintiffs' pay.

191.    As to defendant DIRECTV, Plaintiffs are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three years preceding the filing their consent to join forms in the *Lang* or *Arnold* litigation,[5] plus periods of equitable tolling, because DIRECTV acted willfully and knew or showed reckless disregard in their violation of the FLSA.

192.    Pursuant to Defendants' policies and practices, Defendants willfully violated the FLSA by refusing and failing to pay Plaintiffs overtime and minimum wages. In the course of perpetrating these unlawful practices, Defendants willfully failed to keep accurate records of all hours worked by, compensation paid to, and expenses incurred by Plaintiffs.

193.    Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA. As a result thereof,

---

[5] Or from the date of filing this complaint for new Plaintiff Austin Carpenter.

Plaintiffs are each entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith in failing to pay Plaintiffs minimum wage and overtime compensation, Plaintiffs are each entitled to an award of prejudgment interest at the applicable legal rate.

194.    As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld from Plaintiffs by Defendants. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

195.    Plaintiffs request relief as described below and as permitted by law.

**WHEREFORE**, Plaintiffs demand a jury trial for all issues so triable, and request the Court enter judgment for Plaintiffs individually and:

a.  Award damages for unpaid minimum wages and unpaid overtime wages under 29 U.S.C. § 216(b);

b.  Award liquidated damages under 29 U.S.C. § 216(b);

c.  Award reasonable attorneys' fees under the Fair Labor Standards Act;

d.  Award costs of suit under 29 U.S.C. § 216(b);

e.  Award pre-judgment interest;

f.  Award damages including wages or other compensation lost as a result of the misclassification; and

g.  Grant any further relief that the Court may deem just and equitable.

Dated: October 20, 2014                    Respectfully submitted,


                                           /S/ Jesse B. Hearin, III

                               By:    _____

                                      **HEARIN, LLC**
                                      Jesse B. Hearin, III, *PHV Forthcoming*
                                      La. Bar Roll No. 22422
                                      1009 Carnation Street, Suite E
                                      Slidell, Louisiana 70460
                                      Telephone:     985-639-3377

                                      Email: jbhearin@hearinllc.com **STUEVE SIEGEL
                                      HANSON LLP**

                                      George A. Hanson, *PHV Forthcoming*
                                      MO Bar No. 43450
                                      460 Nichols Road, Suite 200
                                      Kansas City, Missouri 64112
                                      Telephone:     816-714-7100
                                      Facsimile:      816-714-7101
                                      Email:  hanson@stuevesiegel.com

                                      Ryan D. O'Dell, *PHV Forthcoming*
                                      CA Bar No. 290802
                                      500 West C Street, Suite 1750
                                      San Diego, California 92101
                                      Telephone:     619-400-5826
                                      Facsimile:      619-400-5832
                                      Email: odell@stuevesiegel.com


                                      **LEAR WERTS LLP**
                                      Bradford B. Lear, *PHV Forthcoming*
                                      Mo. Bar No. 53204
                                      Email: lear@learwerts.com
                                      Todd C. Werts, *PHV Forthcoming*
                                      Mo. Bar No. 53288
                                      Email: werts@learwerts.com
                                      2003 W. Broadway, Ste. 107
                                      Columbia, Missouri 65203
                                      Telephone:     573-875-1991
                                      Facsimile:      573-875-1985

                                      *Attorneys for Plaintiffs*