FILED

2017 Feb-21  PM 06:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

KRIS BATTLE, RUSSELL
BLAKELY, RODNEY BRIDGES,
TANNER CARDEN, DOUGLAS
FERREN, ROBERT FIELD, TYRONE
KELLEY, CARL KENNEDY, ELLON
LAMOTHE, ANDREW MITCHELL,
JOSE MORALES, RICARDO
NEWMAN, JAYSON PORTER,
DUSTY PRESTRIDGE, JAMES
RENKL, KENNETH ROGERS, GENO       Case No. 2:14-cv-02007-AKK
MARINE, and AUSTIN CARPENTER,

       Plaintiffs,

v.

DIRECTV, INC., and DIRECTV, LLC,

       Defendants.

---

## MEMORANDUM IN SUPPORT OF DIRECTV, LLC'S MOTION FOR SUMMARY JUDGMENT NO. 3:

## PLAINTIFFS ARE EXEMPT FROM OVERTIME UNDER SECTION 7(i) OF THE FLSA

---

JULIE SCHIFF
jschiff@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Wells Fargo Tower
420 20th Street North, Suite 1400
Birmingham, Alabama  35203
Telephone:  (205) 328-0480

ERIN E. PELLETERI
epelleteri@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
201 St. Charles Avenue, Suite 3600
New Orleans, LA  70170
Telephone:  (504) 566-5287
(Admitted pro hac vice on 01/20/2015)

PATRICIA J. MARTIN
PMartin@littler.com
LITTLER MENDELSON
One Metropolitan Square
211 North Broadway, Suite 1500
St. Louis, Missouri 63102
(314) 659-2011
(Admitted pro hac vice on 01/16/2015)

*Attorneys for DIRECTV, LLC*

Dated:  February 21, 2017

# **TABLE OF CONTENTS**

Page(s)

Introductory Statement........................................................................ 1

I.    Statement of Undisputed Material Facts ................................. 2

II.   Standard of Review........................................................... 5

III.  Plaintiffs Are Exempt From Overtime
Under Section 7(i) of the FLSA ............................................. 7

      A.    DIRECTV is a Retail or Service
Establishment Under Section 207(i) ............................ 8

      B.    Plaintiffs Were Paid "Commissions." .......................... 12

      C.    Plaintiffs Regular Rate of Pay Exceeded
One and One Hals Times
the Applicable Minimum Wage .................................... 18

IV.  Conclusion ......................................................................... 19

i

# TABLE OF AUTHORITIES

Page(s)

CASES

*Alvarado v. Corporate Cleaning Servs., Inc.*,
    782 F.3d 365 (7th Cir. 2015) ...........................................................................12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...........................................................................................5

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*,
    931 F.2d 1472 (11th Cir.1991) ..........................................................................7

*Charlot v. Ecolab, Inc.*,
    136 F. Supp. 3d 433 (E.D.N.Y. 2015) .............................................................16

*Gruchy v. DirecTech Delaware, Inc.*,
    No. 08-10755, 2010 WL 3835007 (D. Mass. 9/30/10) .....................................12

*Horn v. Digital Cable & Commc'ns, Inc.*,
    No. 06-325, 2009 WL 4042407 (N.D. Ohio 2/11/09) .......................................12

*Info. Sys. & Networks Corp. v. City of Atlanta*,
    281 F.3d 1220 (11th Cir. 2002) ......................................................................5,6

*Johnson v. Wave Comm GR, LLC*,
    4 F. Supp. 3d 423 (N.D.N.Y. 2014. ................................................................14

*Jones v. Tucker Commc'ns, Inc*.,
    No. 11-398, 2013 WL 6072966 (M.D. Ga. 11/18/13).........................8, 9, 12, 16

*Klinedinst v. Swift Invs., Inc.*,
    260 F.3d 1251 (11th Cir. 2001) ...........................................................7, 12, 13

*Kuntsmann v. Aaron Rents, Inc.*,
    903 F. Supp. 2d 1258 (N.D. Ala. 2012).................................................7, 18, 19

*Matrai v. DIRECTV, LLC*,
    168 F. Supp. 3d 1347 (D. Kan. 2016)........................................................*passim*

*Moore v. Advanced Cable Contractors, Inc.,*
No. 12-00115, 2013 WL 3991966 (N.D. Ga. 8/1/13) ..................................12, 16

*Owopetu v. Nationwide CATV Auditing Servs., Inc.,*
No. 10-18, 2011 WL 4433159 (D. Vt. 9/21/11) ............................................8, 12

*Roeder v. DIRECTV, Inc.,*
No. 14-4091, 2017 WL 151401 (N.D. Iowa 1/13/17) .......................9, 11, 14, 16

*Russell v. Promove, LLC,*
No. 06-00659, 2009 WL 1285885 (N.D. Ga. 5/5/09) .........................................9

*United States v. Four Parcels of Real Prop.,*
941 F.2d 1428 (11th Cir. 1991) .............................................................................6

**STATUTES**

29 U.S.C. § 206 ..............................................................................................7, 18

29 U.S.C. § 207(i) ...................................................................................1, 7, 8, 12

**RULES**

Fed. R. Civ. P. 56 .............................................................................................5, 6

**OTHER AUTHORITIES**

29 C.F.R. § 779.302 ............................................................................................9

29 C.F.R. § 779.318 ............................................................................................9

29 C.F.R. § 779.411 ............................................................................................9

29 C.F.R. § 779.419 ..........................................................................................18

**MAY IT PLEASE THE COURT:**

DIRECTV, LLC respectfully submits this Memorandum in Support of its Motion for Summary Judgment No. 3: Plaintiffs Are Exempt from Overtime Under Section 7(i) of the FLSA. This exemption provides an independent grounds for dismissal of Plaintiffs' claims against DIRECTV under the Fair Labor Standards Act, §§ 201-219 ("FLSA"). Accordingly, even if there is a genuine issue of material fact as to whether Plaintiffs were employees of DIRECTV, DIRECTV is nevertheless entitled to summary judgment because Plaintiffs are exempt from the overtime requirements of the FLSA.

**INTRODUCTORY STATEMENT**

Plaintiffs are exempt from the overtime requirements of the FLSA pursuant to 29 U.S.C. § 207(i) (referred to as the "7(i)" exemption). As the United States District Court for the District of Kansas recently found on summary judgment, in a case involving nearly identical circumstances to this one, technicians installing DIRECTV systems who are paid by the task or job are exempt from overtime under the 7(i) exemption. Similarly, the undisputed facts demonstrate that DIRECTV has satisfied the requirements of the 7(i) exemption: (1) DIRECTV is a retail or service establishment; (2) Plaintiffs' own sworn testimony demonstrates that their compensation was in the form of "commissions" as defined by applicable law; and (3) Plaintiffs earned well over more than one and one-half times the

applicable minimum wage.   Accordingly, Plaintiffs are exempt from overtime under the 7(i) exemption.

## I.   <u>Statement of Undisputed Material Facts</u>

The business of DIRECTV is to provide satellite television service to the general public.[1]  Well over 75% of DIRECTV's revenue is generated from the sales of goods and services to the end user and is not for resale.[2]  As Plaintiffs admitted, their job was to install DIRECTV service in customers' homes.[3]  The sale of DIRECTV services to customers, and the services performed by technicians to fulfill the retail transaction such as delivering, installing, and servicing the equipment, are recognized as "retail services" in the cable and satellite television industry.[4]

---

[1] *See* Ex. 3, Deposition of Kris Battle II, taken 12/12/16 ("Battle Depo. II"), p. 143:12-20; Ex. 9, Deposition of Russell Blakely, taken 10/20/16 ("Blakely Depo. II"), p. 205:2-4; Ex. 11, Deposition of Rodney Bridges ("Bridges Depo."), p. 184:12-24; Ex. 13, Deposition of Tanner Carden ("Carden Depo."), p. 165:16-18; Ex. 15,  Deposition of Austin Carpenter ("Carpenter Depo."), p. 325: 16-24; Ex. 18, Deposition of Robert Field ("Field Depo."), p. 251:13-17; Ex. 20, Deposition of Carl Kennedy ("Kennedy Depo."), pp.174:21-175:2; Ex. 23, Deposition of Ellon LaMothe ("LaMothe Depo."), p. 321:4-6; Ex. 30, Deposition of Andrew Mitchell ("Mitchell Depo."), p. 154:5-7; Ex. 32, Deposition of Jose Morales ("Morales Depo."), p. 107:6-9; Ex. 33, Deposition of Ricardo Newman ("Newman Depo."), pp. 170:25-171:8.

[2] *See* Ex. 83, Declaration of Valerie Kirby (Senior Financial Analyst at DIRECTV), dated 6/16/15 ("Kirby Dec."), filed in *Arnold v. DIRECTV, Inc.*, E.D. Mo. Case No. 4:10-CV-00352-JAR, ECF No. 317-1, at ¶ 4.

[3] *See* Ex. 20, Kennedy Depo., p. 175:3-6; Ex. 13, Carden Depo., p. 165:19-24.

[4] *See* Ex. 84, Declaration of Steven Hill (Deputy Executive Director of the Satellite Broadcast and Communications Association), dated 5/22/15 ("Hill Dec."), filed in *Arnold v. DIRECTV, Inc.*, E.D. Mo. Case No. 4:10-CV-00352-JAR, ECF No. 331-2 at ¶¶ 4-5.

Plaintiffs were paid based on the work orders they closed.[5]   Additionally, they admitted that in order for them to complete a DIRECTV work order, the customer must have first ordered DIRECTV service.[6]   Plaintiffs also admitted they were paid a certain amount by their subcontractors for a basic job consisting of installing a satellite dish and one receiver and an additional amount for installing additional receivers at customer's homes.[7]   Plaintiffs' compensation was also proportional to the prices paid by DIRECTV customers and the compensation paid to Plaintiffs.[8]

---

[5] *See* Ex. 3, Battle Depo. II, pp. 37:11-41:25 and 53:13-54:18; Ex. 9, Blakely Depo. II, pp. 107:4-11 and 161:5-16; Ex. 8, Media Net Installer Agreement (Exhibit 21 to Blakely Depo. I); Ex. 7, Pay Report by TB Consulting to R. Blakely (Exhibit 20 to Blakely Depo I); Ex. 11, Bridges Depo., pp. 36:25-37:25 and 39:9-40:9; Ex. 13, Carden Depo., pp. 23:15-24:25, 36:13-39:11, and 89:12-90:13; Ex. 15, Carpenter Depo. pp. 39:20-40:15; Ex. 18, Field Depo., p. 61:6-23 and 85:24-86:4; Ex. 19, Kelley Depo., pp. 59:2-10 and 132:4-7; Ex. 20, Kennedy Depo., pp. 74:3-75:17, 84:3-85:7, 88:20-90:23, and 169:5-25; Ex. 28, Marine Depo., pp. 77:10-12; Ex. 32, Morales Depo., pp. 42:19-43:25, 44:2-6, and 45:7-11; Ex. 33, Newman Depo., pp. 182:22-183:5; Ex. 37, Prestridge Depo., pp. 158:5-14 and 262:11-263:6; Ex. 35, Porter Depo., pp. 139:24-140:10; Ex. 41, Renkl Depo., pp. 35:10-14 and 41:9-16; Ex. 43, Rogers Depo., pp. 63:10-64:11 and 70:17-71:5.

[6] *See* Ex. 11, Bridges Depo., pp. 185: 8-12; Ex. 13, Carden Depo., pp. 165:25-166:9; Ex. 20, Kennedy Depo., p. 180:19-24; Ex. 30, Mitchell Depo., p. 154:5-16; Ex. 32, Morales Depo., p. 107:7-17.

[7] *See* Ex. 9, Blakely Depo. II, pp. 205:15-206:2; Ex. 23, LaMothe Depo., p. 187:12-19; Ex. 30, Mitchell Depo., pp. 30:10-13, 31:14-17; Ex. 32, Morales Depo., pp. 26:24-27:6 and 78:10-24; Ex. 37, Prestridge Depo., p. 106:2-4.

[8] *See* Ex. 9, Blakely Depo. II, pp. 82:8-83:2; Ex. 11, Bridges Depo., p. 83:2-5; *see also* Ex. 74, Deposition of Tim Cole (former DIRECTV Regional Vice-President Southeast Midwest), taken on 12/16/16 ("Cole Depo"), pp. 144:17-145:12; Ex. 77, Deposition of Roger Hope (DIRECTV Regional Director of Operations Southeast Midwest), taken on 1/5/17("Hope Depo."), in *Cringan, et al. v. DIRECTV*, W.D. Mo. Case No. 5:14-CV-06113-HFS, pp. 148:22-150:2.

Plaintiffs also earned additional money for a work order if they performed custom labor work (that which is not encompassed by the original work order) or if they sold the DIRECTV Protection Plan to customers.[9] The amount of money Plaintiffs were paid for the job did not depend on how long it took them to complete the work order.[10] Plaintiffs admitted that if they were faster and more efficient, or sold additional services to customers, they earned more money.[11]

Furthermore, Plaintiffs were consistently incentivized to complete work as quickly as possible in order to either request additional jobs or to be available to accept additional work if offered by their subcontracting companies.[12] Plaintiffs' compensation was tied to the work they completed; the more a DIRECTV customer ordered in terms of service and number of receivers, the more a

---

[9] *See* Ex. 3, Battle Depo. II, p. 154:16-21; Ex. 13, Carden Depo., pp. 37:7-38:21; Ex. 73, Deposition of Kyle Clayborne ("Clayborne Depo."), p. 161:1-16; Ex. 23, LaMothe Depo., p. 187:5-8; Ex. 28, Marine Depo., p. 91:13-20; Ex. 30, Mitchell Depo., p. 155: 14-21; Ex. 33, Newman Depo., p. 171:21-25; Ex. 41, Renkl Depo., p. 61:21-62:14.

[10] *See* Ex. 9, Blakely Depo. II p. 205:5-11; Ex. 18, Field Depo., pp. 251: 18-24; Ex. 23, LaMothe Depo., p. 321:12-15; Ex. 32, Morales Depo., p. 78:10-18; Ex. 35, Porter Depo., pp. 181: 23-182:10; Ex. 41, Renkl Depo., p. 129:12-16; Ex. 43, Rogers Depo., p. 213:6-11.

[11] *See* Ex. 3, Battle Depo. II, p. 154:16-21; Ex. 9, Blakely Depo. II, p. 82:8-83:2; Ex. 11, Bridges Depo., p. 83:2-5; Ex. 13, Carden Depo. at pp. 37:7-38:21; Ex. 18, Field Depo., pp. 251:23-252:6; Ex. 23, LaMothe Depo., p. 187:5-8; Ex. 28, Marine Depo., p. 91:13-20; Ex.30, Mitchell Depo., p. 155: 14-21; Ex. 41, Renkl Depo., pp. 61:21-62:14; *see also* Ex. 74, Cole Depo., pp. 144:17-145:12; Ex. 77, Hope Depo., pp. 148:22-150:2.

[12] *See* Ex. 9, Blakely Depo. II, pp. 82:8-83:2; Ex. 11, Bridges Depo., p. 83:2-5; Ex. 23, LaMothe Depo., p. 187:5-8.

4

technician would be paid because he received payment for more line items.[13]  By their own admission, Plaintiffs were all paid more than one and one-half times the applicable minimum wage for their DIRECTV installation work.[14]

## II.   Standard of Review

Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[15]  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info.*

---

[13] *See* Ex. 9, Blakely Depo. II, pp. 205:15-206:2; Ex. 23, LaMothe Depo., p. 187:12-19; Ex. 30, Mitchell Depo., pp. 30:10-13, 31:14-17; Ex. 32, Morales Depo., pp. 26:24-27:6 and 78:10-24; Ex. 37, Prestridge Depo., p. 106:2-4.

[14] Ex. 46, Verified Interrogatory Responses for Kris Battle, pp. 2-4, 5-7, at ¶¶ 3, 5; Ex. 47, Verified Interrogatory Responses for Russell Blakely, pp. 2-7, at ¶¶ 3,5; Ex. 48, Verified Interrogatory Responses for Rodney Bridges, pp. 2-6, at ¶¶ 3,5; Ex. 49, Verified Interrogatory Responses for Tanner Carden, pp. 2-6, at ¶¶ 3,5; Ex. 50, Verified Interrogatory Responses for Austin Carpenter, pp. 2-7, at ¶¶ 3,5; Ex. 51, Verified Interrogatory Responses for Douglas Ferren, pp. 2-6, at ¶¶ 3,5; Ex. 52, Verified Interrogatory Responses for Robert Field, pp. 2-6, at ¶¶ 3,5; Ex. 53, Verified Interrogatory Responses for Tyrone Kelley, pp. 2-6, at ¶¶ 3,5; Ex. 54, Verified Interrogatory Responses for Carl Kennedy, pp. 3-7, at ¶¶ 3,5; Ex. 55, Verified Interrogatory Responses for Ellon LaMothe, pp. 2-7, at ¶¶ 3,5; Ex. 56, Verified Interrogatory Responses for Geno Marine, pp. 2-6, at ¶¶ 3,5; Ex. 57, Verified Interrogatory Responses for Andrew Mitchell, pp. 2-7, at ¶¶ 3,5; Ex. 58, Verified Interrogatory Responses for Jose Morales, pp. 2-6, at ¶¶ 3,5; Ex. 59, Verified Interrogatory Responses for Ricardo Newman, pp. 2-6, at ¶¶ 3,5; Ex. 60, Verified Interrogatory Responses for Jayson Porter, pp. 3-7, at ¶¶ 3,5; Ex. 61, Verified Interrogatory Responses for Dusty Prestridge, pp. 3-7, at ¶¶ 3,5; Ex. 62, Verified Interrogatory Responses for James Renkl, pp. 2-7, at ¶¶ 3,5; Ex. 63, Verified Interrogatory Responses for Kenneth Rogers, pp. 2-6, at ¶¶ 3,5; *see also* Ex. 64, Affidavit of Julie Schiff authenticating Damages Estimates Chart; Ex. 65, Damages Estimates Chart.

[15] FED.R.CIV.P. 56(a).

*Sys. & Networks Corp. v. City of Atlanta,* 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.,* 941 F.2d 1428, 1437 (11th Cir. 1991)). The burden rests with the moving party to prove that no genuine issue of material fact exists. *Info. Sys. & Networks Corp.,* 281 F.3d at 1224.  The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A).

If the moving party bears the burden of proof at trial, as DIRECTV does on this issue, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment.  *Four Parcels of Real Prop.*, 941 F.2d at 1438.  The moving party must carry its burden by presenting "credible evidence" affirmatively showing that, "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *Four Parcels of Real Prop.,* 941 F.2d at 1438.

"If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'comes[s] forward with significant, probative evidence demonstrating the existence of a triable issue

of fact.'" *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.,* 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original).

### III.   Plaintiffs Are Exempt From Overtime Under Section 7(i) of the FLSA.

Assuming, *arguendo*, that Plaintiffs were jointly employed by DIRECTV, the undisputed facts demonstrate that Plaintiffs are exempt under 29 U.S.C. § 207(i) of the FLSA, or the "7(i)" exemption.  Section 207(i) of the FLSA provides the following exemption from the statute's overtime requirements:

> No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of [40 hours], if, (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i).  As set forth in the statute, the following three elements must be satisfied for the exemption to apply: (1) the employer is a "retail or service establishment"; (2) the employee's regular rate of pay is at least one and one-half times the minimum wage; and (3) more than half the employee's compensation for the representative period is from commissions.[16]  Significantly, federal district courts have repeatedly applied the "7(i)" exemption to cable and satellite installation technicians like Plaintiffs and have done so based on facts virtually

---

[16] *See Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001); *Kuntsmann v. Aaron Rents, Inc.*, 903 F. Supp. 2d 1258, 1266 (N.D. Ala. 2012).

identical to those present here. *See, e.g., Matrai v. DIRECTV, LLC*, 168 F. Supp. 3d 1347, 1358-1365 (D. Kan. 2016) (applying 7(i) exemption to satellite technicians engaged by subcontractors of DIRECTV); *Jones v. Tucker Comm'ns., Inc.*, No. 11-398, 2013 WL 6072966, at \*4-11 (M.D. Ga. 11/18/13) (applying 7(i) exemption to cable technicians engaged by subcontractors of Charter Communications); *Owopetu v. Nationwide CATV Auditing Servs., Inc.*, No. 10-18, 2011 WL 4433159, at \*3-7 (D. Vt. 9/21/11) (same).  These cases are directly on point.

In *Matrai*, for example, the United States District Court for the District of Kansas held that the plaintiffs who, like the Plaintiffs in this case, were engaged to complete DIRECTV work orders through a subcontractor were exempt from overtime under the 7(i) exemption. *Matrai*, 168 F. Supp. at 1365. ("The court concludes that DIRECTV has carried its burden of showing the retail or service establishment exemption is met and that DIRECTV is exempt from paying overtime pursuant to 29 U.S.C. § 207(i).").  The relevant facts in *Matrai* are also present in this case, and the Court should find that Plaintiffs are exempt pursuant to Section 207(i).

      A.    *DIRECTV is a Retail or*
               *<u>Service Establishment Under Section 207(i).</u>*

A "retail or service establishment" is defined as "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is

8

not for resale and is recognized as retail sales or services in the particular industry." 29 C.F.R. § 779.411.[17]

According to the DOL, whether an establishment providing a service is recognized as a "retail or service establishment" depends on the "character" of the establishment — its principal activity or purpose. *See* 29 C.F.R. § 779.302.  A retail or service establishment is one that serves the everyday needs of the community, provides services at the end of the stream of distribution, and provides services for the comfort and convenience of such public in the course of its daily living. 29 C.F.R. § 779.318.

Multiple district courts have expressly determined that DIRECTV is a "retail or service establishment" under the statute.  *See Matrai*, 168 F. Supp. 3d at 1361-62; *Roeder v. DIRECTV, Inc.*, No. 14-4091, 2017 WL 151401, at *29 (N.D. Iowa 1/13/17).  In *Matrai*, the court began its analysis of whether DIRECTV was a "retail or service establishment" by citing 29 C.F.R. §779.411.  *Id.*  It then considered other relevant factors, as set forth in DOL regulations and relevant case law, and found that DIRECTV qualified as a retail or service establishment based on the following facts: (1) DIRECTV sells an everyday service delivered through sophisticated equipment installed in the retail consumers' homes; (2) DIRECTV

---

[17] Although this definition originates from § 213(a)(2) of the FLSA, which was repealed in 1989, the Department of Labor ("DOL") and district courts in the Eleventh Circuit still look to it for guidance. *See Jones*, 2013 WL 6072966, at *5; *Russell v. Promove, LLC*, No.06-00659, 2009 WL 1285885, at *3 (N.D. Ga. 5/5/09).

sells its services to the ultimate customers, and the equipment installed and serviced in the customers' homes is not resold; (3) Plaintiffs were completing work orders for the installation of satellite television equipment purchased in a retail transaction; (4) Consumers had purchased installation services as part of a retail package of equipment and services; and (5) Plaintiffs were providing installation and repair services in connection with a retail product for the comfort, convenience, and enjoyment of the retail purchasers. *Id.* at 1359-62.

The Northern District of Iowa recently reached a similar conclusion regarding DIRECTV's status as a "retail or service establishment":

> I find the undisputed facts demonstrate that DIRECTV is a "retail and service establishment" as the Eighth Circuit defined that term in *Reich*. It is undisputed that the goods and services provided by DIRECTV are not for resale because they are provided to end user customers in their homes. The second part of the analysis requires DIRECTV to prove that its business is recognized as retail in the industry. This involves a two-prong inquiry of whether (1) the establishment is part of an industry in which there is a "retail concept" and (2) the establishment's services are recognized as retail in that particular industry.
>
> With regard to whether DIRECTV has a "retail concept," I find persuasive the reasoning of those cases that have concluded cable installers (i.e., contracting companies) have a retail concept. These cases focus on whether the establishment "sells goods or services to the general public" and "serves the everyday needs of the community in which it is located." If this definition applies to the contracting companies, then it certainly applies to the cable provider that supplies the ultimate product being purchased.
>
> With regard to whether DIRECTV's business is recognized as "retail" in the industry, I also find no genuine issue of material fact. . . The

declaration submitted by DIRECTV from the Deputy Executive Director of the Satellite Broadcast and Communications Association, a national trade organization, is sufficient to establish this prong.

*Roeder*, 2017 WL 151401, at *29 (internal citations omitted).

The undisputed facts that established DIRECTV as a "retail or service establishment" in *Matrai* and *Roeder* are identical to those in this case. The business of DIRECTV is to provide satellite television service to the general public.[18] Moreover, well over 75% of DIRECTV's revenue is generated from the sales of goods and services to the end user and is not for resale.[19] DIRECTV also provides its services for the comfort and convenience of the public in the course of its daily living.  As Plaintiffs admitted, their job was to install DIRECTV service in customers' homes.[20] Furthermore, installation of DIRECTV satellite equipment is recognized as retail in the industry.[21]

Like the courts in *Matrai* and *Roeder*, courts in this Circuit and elsewhere have routinely accepted that the industry of providing, servicing, and installing

---

[18] *See* Ex. 3, Battle Depo. II, p. 143:12-20; Ex. 9, Blakely Depo. II, p. 205; Ex. 11, Bridges Depo., p. 184:12-24; Ex. 13, Carden Depo., p. 165:16-18; Ex. 15, Carpenter Depo., p. 325:16-24; Ex. 18, Field Depo., p. 251:13-17; Ex. 20, Kennedy Depo., pp.174:21-175:2; Ex. 23, LaMothe Depo., p. 321:4-6; Ex. 30, Mitchell Depo., p. 154:5-7; Ex. 32, Morales Depo., p. 107:6-9; Ex. 33, Newman Depo., pp. 170:25-171:8.

[19] *See* Ex. 83, Kirby Dec., ¶ 4.

[20] *See* Ex. 20, Kennedy Depo., p. 175:3-6; Ex. 13, Carden Depo., p. 165:19-24.

[21] *See* Ex. 84, Hill Dec., ¶¶ 4-5.

television service (cable or satellite) and broadband has a "retail concept."[22] Accordingly, the undisputed facts establish that, as a matter of law, DIRECTV meets the "retail or service establishment" prong of the § 207(i) overtime exemption.

### B.   *Plaintiffs Were Paid "Commissions."*

The undisputed facts further demonstrate that Plaintiffs were paid "commissions" and, therefore, satisfy the second prong of the 7(i) exemption. Although the FLSA does not define the term commission, whether a payment method is properly characterized as a commission for purposes of the 7(i) exemption is an issue of law. *Klinedinst v. Swift Invs., Inc.,* 260 F.3d 1251, 1254 (11th Cir. 2001).   Moreover, what a company calls its compensation system is irrelevant to the application of the 7(i) exemption. *See Alvarado*, *v. Corporate Cleaning Servs., Inc.*, 782 F.3d 365, 367 (7th Cir. 2015) ("[T]he nomenclature is not determinative; the word commission need not be used for the exemption to be applicable.").   Thus, despite the fact that Plaintiffs' pay was generally referred to

---

[22] *See also*, *e.g.*, *Jones,* 2013 WL 6072966, at *7-10; *Moore v. Advanced Cable Contractors, Inc.,* No. 12-00115, 2013 WL 3991966, at *3 (N.D. Ga. 8/1/13); *Owopetu*, 2011 WL 4433159, at *4 ("[The plaintiff] does not dispute that the industry of servicing, installing and repairing cable and broadband equipment has a 'retail concept.'"); *Horn v. Digital Cable & Commc'ns, Inc.,* No. 06-325, 2009 WL 4042407, at *2 (N.D. Ohio 2/11/09) (noting defendant cable installation company put forth undisputed evidence that it qualified as a retail or service establishment); *see also Gruchy v. DirecTech Delaware, Inc.,* No. 08-10755, 2010 WL 3835007, at *2 (D. Mass. 9/30/10) (noting that there was no dispute that a company performing similar services for a satellite television provider was a retail or service establishment).

as "piecework" or "production pay," it still falls squarely within the legal definition of a commission.

In *Klinedinst,* the Eleventh Circuit held a payment system in which automobile painters were paid based on "flag hours" multiplied by an hourly rate constituted commission-based payment because it "(1) provides workers with an incentive to work quickly, while (2) paying them at a rate that exceeds minimum wage." 260 F.3d at 1256.  While these "flag hours" were based on time estimates, employees received the same amount of compensation regardless of the actual time it took to complete the jobs. *Id.* at 1254.  The court focused on how the payment system incentivized employees "to work efficiently and effectively to the benefit of the employer, who may then take on more customers at a greater profit margin, and the employee, who reaps the benefits of increased flag hours regardless of the actual time worked." *Id.* at 1256.

The *Matrai* court's analysis is once again directly on point. In *Matrai*, the technicians installing DIRECTV services were paid for jobs at a rate that varied with the number of receivers installed and whether the DIRECTV protection plan or additional products were sold. *Matrai*, 168 F. Supp. 3d at 1363.  As a result, the pay for each job fluctuated with the value of the services the technicians performed (such as the number of outlets and receivers) and with additional products they sold (such as upgrades and the protection plan).  *Id.*   The rate of pay received did

13

not depend on the actual time it took plaintiffs to complete the work order.  *Id.* The
more jobs plaintiffs completed in a day, the more money they were paid.  *Id.*
Importantly, installers who wanted to make more money were incentivized to work
efficiently and take additional work orders that became available.  *Id.* at 1365.
Finally, plaintiffs worked irregular hours.  *Id.*  Based upon these factors, the *Matrai*
court found that "the evidence of record here sufficiently shows the indicators of a
commission system of compensation[.]" *Id.*[23]

Here, Plaintiffs' production pay has all of the hallmarks of a commission.
Indeed, at their depositions, Plaintiffs admitted that each factor typically
considered   was present in the method by which they were compensated for
completing DIRECTV work orders.  Specifically, Plaintiffs testified:

- They were paid based on the work orders they closed.[24]

- To complete a DIRECTV work order, the customer must have first
  ordered DIRECTV service.[25]

---

[23] In *Roeder*, the Northern District of Iowa similarly identified the following three factors
to establish the payment of a "commission" under the FLSA: "(1) the employee's compensation
must be tied to customer demand or the quantity of sales, (2) the compensation plan must
provide performance-based incentives for the employee to increase his or her income; and (3)
there must be proportionality between the value of the goods or services sold and the rate paid to
the employee." *Roeder*, 2017 WL 151401, at *29 (quoting *Johnson v. Wave Comm GR, LLC*,
4 F. Supp. 3d 423, 442 (N.D.N.Y. 2014)). Each of these factors is clearly present in the instant
case.

[24] *See supra* note 5.

[25] *See supra* note 6.

- They were paid a certain amount for a basic job consisting of installing a satellite dish and one receiver and an additional amount for installing additional receivers at customer's homes.[26]

- They earned additional money for a work order if they performed custom labor work (that which is not encompassed by the original work order) or if they sold the DIRECTV Protection Plan to customers.[27]

Importantly, the amount of money Plaintiffs were paid for the job did not depend on how long it took them to complete the work order.[28]  Plaintiffs admitted that if they were faster and more efficient, or sold additional services to customers, they earned more money.[29]  More specifically, Plaintiffs testified that they were consistently incentivized to complete work as quickly as possible in order to either request additional jobs or to be available to accept additional work if offered.[30]  Furthermore, Plaintiffs' compensation was tied to the work they completed; the more a DIRECTV customer ordered in terms of service and number of receivers,

---

[26] *See supra* note 7.

[27] *See supra* note 9.

[28] *See supra* note 10.

[29] *See* Ex. 13, Carden Depo., pp. 37:7-38:21; Ex. 9, Blakely Depo. II, pp. 82:8-83:2; *see also* Ex. 74, Cole Depo, pp. 144:17-145:12; Ex. 77, Hope Depo., pp. 148:22-150:2.

[30] *See* Ex. 9, Blakely Depo. II, pp. 82:8-83:2; Ex. 11, Bridges Depo., p. 83:2-5.

the more a technician would be paid since he received payment for more line items. [31] In sum, Plaintiffs were compensated on a commission basis.

Consistent with *Matrai*, other district courts both in this Circuit and elsewhere have found that production-based pay identical to the pay Plaintiffs described at their depositions constitutes commissions for purposes of the 7(i) exemption.[32] Moreover, here, Plaintiffs were incentivized to work efficiently so that they could receive additional work orders and earn more, and there was a proportionality between the prices paid by DIRECTV customers and the compensation paid to Plaintiffs. During his deposition, Tim Cole, a Regional Director of Operations for DIRECTV, explained:

---

[31] The *Roeder* court denied summary judgment on the Section 7(i) exemption because it found on the particular record before it (involving two technicians) that DIRECTV had not shown that more than half of the plaintiffs' pay was based upon commissions, based upon DIRECTV's failure to show sufficient evidence that the plaintiffs were "incentivized to work efficiently so that they could receive additional work orders and earn more" and "proportionality between the prices paid by DIRECTV customers and the compensation paid to plaintiffs." *Roeder*, 2017 WL 151401, at *30-31. Any alleged absence in that factual record is not similarly present on this record, which is similar to the record in *Matrai* that warranted the granting of summary judgment in DIRECTV's favor. *See id.* at *30; *see also* Ex. 74, Cole Depo., pp. 144:17-145:12; Ex. 77, Hope Depo., pp. 148:22-150:2.

[32] *See Jones*, 2013 WL 6072966, at *4-11 (granting summary judgment based on the 7(i) exemption and finding that cable television installers were paid commissions where they were paid a set amount per task, the length of time they took to complete jobs did not determine their compensation, they had the opportunity to pick up additional jobs during the day, and technicians who completed many jobs per week were paid more than technicians who completed few); *Moore*, 2013 WL 3991966, at *5; *Charlot v. Ecolab, Inc.*, 136 F. Supp. 3d 433, 453-56 (S.D.N.Y. 2015) (finding that compensation plan was a bona fide commission where the commission was tied to customer demand and the scheme provided incentives to employees to work more efficiently such that compensation was decoupled from actual time worked).

**Q.** Do DIRECTV subscribers pay more for their subscription if they have more receivers in their house?

….

**A.** Yes, ma'am.

**Q.** Does DIRECTV pay its subcontracting companies more for work orders that involve installing additional receivers?

**A.** Is your question meaning the difference if you install one receiver versus you install five receivers?

….

**Q.** Yes.

**Q.** Does DIRECTV pay a subcontracting company who completes a work order that involves installing five receivers more than paying a subcontracting company for a work order that involved installing only one receiver?

….

**A.** Yes, ma'am.[33]

Installation is one step in the retail transaction of selling DIRECTV services and is offset by the revenue DIRECTV receives for monthly subscriptions and other fees paid by the customer. Indeed, the *Matrai* court expressly held that where, as here, DIRECTV installation technicians are paid a base amount for a work order and are paid extra for installing additional receivers, the rate of pay received by the technician is related to the price of the sale to the customer. *Matrai,*

---

[33] Ex. 74, Cole Depo., pp. 144:17-145:12.

*Matrai*, 168 F. Supp. at 1364.  Because the type of pay per work order received by Plaintiffs legally constitutes commissions, and such pay constituted more than half of Plaintiffs' pay, DIRECTV has satisfied this prong of the 7(i) exemption.

C.     *Plaintiffs' Regular Rate Of Pay Exceeded*
       <u>*One And One Half Times The Applicable Minimum Wage.*</u>

The regular rate of pay under the FLSA is "the rate per hour, computed for the particular workweek by a mathematical computation in which hours worked are divided into straight-time earnings for such hours to obtain the statutory regular rate." 29 C.F.R. § 779.419.   At all times relevant to Plaintiffs' overtime claims, the federal minimum wage was $7.25 per hour.   29 U.S.C. § 206.  By their own admission, Plaintiffs were all paid more than one and one-half times the applicable minimum wage for their DIRECTV installation work.[34]

Importantly, district courts in the Eleventh Circuit have found that a plaintiff's admission of weekly working hours and compensation is sufficient for a defendant to meet his burden of proving this element. *See, e.g., Kuntsmann v. Aaron Rents, Inc.*, 903 F. Supp. 2d 1258 (N.D. Ala. 2012) (concluding plaintiff's testimony about his working hours and defendant's record of plaintiff's compensation proved that plaintiff's regular rate of pay exceeded one and one-half times the minimum wage).  In *Kuntsmann*, neither Aaron Rents, Inc. ("Aaron") nor

---

[34] *See supra* note 14.

18

Kuntsmann produced a detailed record of Kuntsmann's weekly working hours. *Id.* at 1268. Indeed, the only indication the court had of Kuntsmann's weekly working hours was based on Kuntsmann's testimony that he worked "50-60" hours a week. *Id*. The court reasoned that although Aaron had not produced a record of Kuntsmann's weekly working hours, "Kuntsmann's own testimony about his working hours and Aaron's record of Kuntsmann's compensation proves that Kuntsmann's regular rate of pay exceeded one and one-half times the minimum wage." *Id.*

By their own admission, Plaintiffs were all paid more than one and one-half times the applicable minimum wage for their DIRECTV installation work.[35] Therefore, the third requirement for the 7(i) exemption has been satisfied.

### IV.   <u>Conclusion</u>

Based on all of the foregoing facts and authorities, DIRECTV is entitled to summary judgment with respect to all three elements of the 7(i) exemption. DIRECTV has clearly satisfied the requirements of the 7(i) exemption: (1) DIRECTV is a retail or service establishment; (2) Plaintiffs' own deposition testimony demonstrates that all of Plaintiffs' compensation was in the form of "commissions" as defined by applicable law; and (3) Plaintiffs earned well over more than one and one-half times the applicable minimum wage. Accordingly,

---

[35] *Id.*

19

Plaintiffs are exempt from overtime under the 7(i) exemption, and DIRECTV's motion for summary judgment should be granted.

Respectfully submitted,

*s/ Erin E. Pelleteri*
ERIN E. PELLETERI
epelleteri@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
201 St. Charles Avenue, Suite 3600
New Orleans, LA  70170
(504) 566-8617
(Admitted pro hac vice on 01/20/2015)

s/*Julie Schiff*
JULIE SCHIFF
jschiff@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Wells Fargo Tower
420 20th Street North, Suite 1400
Birmingham, Alabama  35203
(205) 328-0480

*s/ Patricia J. Martin*
PATRICIA J. MARTIN
PMartin@littler.com
LITTLER MENDELSON
One Metropolitan Square
211 North Broadway, Suite 1500
St. Louis, Missouri 63102
(314) 659-2011
(*Admitted pro hac vice on 01/16/2015*)

*Attorneys for DIRECTV, LLC*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served via CM/ECF e-file system on this 21st day of February, 2017, addressed to the following counsel on record for Plaintiffs:

Jesse B Hearin, III, Esq.
HEARIN LLC
1009 Carnation Street
Slidell, LA 70460
jbhearin@hearinllc.com

Todd C. Werts, *Admitted Pro Hac Vice*
Lear Werts LLP
2003 West Broadway, Suite 107
Columbia, Missouri 65203
werts@learwerts.com

Crystal R. Cook, *Admitted Pro Hac Vice*
Mo. Bar No. 66852
Lauren E. Luhrs, *Admitted Pro Hac Vice*
Mo. Bar No. 66053
Daniel M. Shaw, *Pro Hac Vice Forthcoming*
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
cook@stuevesiegel.com
Luhrs@stuevesiegel.com
shaw@stuevesiegel.com

*s/ Julie Schiff*_____