FILED
2017 Feb-21  PM 06:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

KRIS BATTLE, RUSSELL
BLAKELY, RODNEY BRIDGES,
TANNER CARDEN, DOUGLAS
FERREN, ROBERT FIELD, TYRONE
KELLEY, CARL KENNEDY, ELLON
LA MOTHE, ANDREW MITCHELL,
JOSE MORALES, RICARDO
NEWMAN, JAYSON PORTER,
DUSTY PRESTRIDGE, JAMES
RENKL, KENNETH ROGERS, GENO
MARINE, and AUSTIN CARPENTER,

**Case No. 2:14-cv-02007-AKK**

       Plaintiffs,

v.

DIRECTV, INC., and DIRECTV, LLC,

       Defendants.

---

## MEMORANDUM IN SUPPORT OF DIRECTV, LLC'S MOTION FOR SUMMARY JUDGMENT NO. 4:

## PLAINTIFFS CANNOT PROVIDE COMPETENT EVIDENCE OF DAMAGES OR SHOW DIRECTV HAD KNOWLEDGE OF THEIR ALLEGED UNPAID WORK; ALTERNATIVELY, PLAINTIFFS CANNOT SHOW A WILLFUL VIOLATION OF THE FLSA

JULIE SCHIFF
jschiff@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Wells Fargo Tower
420 20th Street North, Suite 1400
Birmingham, Alabama  35203
Telephone:  (205) 328-0480

ERIN E. PELLETERI
epelleteri@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
201 St. Charles Avenue, Suite 3600
New Orleans, LA  70170
Telephone:  (504) 566-5287
(*Admitted pro hac vice on 01/20/2015*)

PATRICIA J. MARTIN
PMartin@littler.com
LITTLER MENDELSON
One Metropolitan Square
211 North Broadway, Suite 1500
St. Louis, Missouri 63102
(314) 659-2011
(*Admitted pro hac vice on 01/16/2015*)

*Attorneys for DIRECTV, LLC*

Dated:  February 21, 2017

# <u>TABLE OF CONTENTS</u>

Page(s)

Introductory Statement ........................................................................ 1

I.   Statement of Undisputed Material Facts ................................ 9

    A.   Plaintiffs' Work as Independent Contractors
        for Independent Subcontracting Companies ............................... 9

    B.   The Limited Information Available from Siebel ........................ 11

    C.   Plaintiffs' Inconsistent and Speculative
        Testimony Regarding Their Damages ......................................... 12

II.  Argument ....................................................................................... 12

    A.   Plaintiffs' Claims Should be Dismissed
        Because They Cannot Prove Their Alleged Damages.  .............. 13

    B.   Plaintiffs' Claims Should be Dismissed
        Because They Cannot Show Actual or
        Constructive Knowledge on DIRECTV's Part.  ........................ 17

    C.   Alternatively, Plaintiffs' Claims
        are Limited to the Two-Year
        Statute of Limitations
        Because They Cannot Establish a
        Willful Violation of the FLSA.  ................................................. 23

III. Conclusion .................................................................................... 25

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allen v. Bd. of Pub. Educ. for Bibb Cty.,*
495 F.3d 1306 (11th Cir. 2007).................................................................. 14, 17

*Aly v. Butts County, Ga.,*
841 F. Supp. 1199 (M.D. Ga. 1994) ...............................................................  23

*Anderson v. Mt. Clemens Pottery Co.,*
328 U.S. 680 (1946)..........................................................................................  14

*Brown v. ScriptPro, LLC,*
700 F.3d 1222 (10th Cir. 2012)  ......................................................................  14

*Carmody v. Kansas City Bd. of Police Comm'rs,*
713 F.3d 401 (8th Cir. 2013).............................................................................  14

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)..................................................................................... 13, 15

*DiSantis v. Morgan Properties Payroll Servs., Inc.,*
No. 09-6153, 2010 WL 3606267 (E.D. Pa. 9/16/10)....................................  17

*Dolphin Tours, Inc. v. Pacifico,*
773 F.2d 1506 (9th Cir. 1985)...........................................................................  15

*Fitzpatrick v. City of Atlanta,*
2 F.3d 1112 (11th Cir. 1993)....................................................................... 15, 16

*Gulf King Shrimp Co. v. Wirtz,*
407 F.2d 508 (5th Cir. 1969) ............................................................................  18

*Harville v. Westward Communications,*
433 F.3d 428 (5th Cir. 2005) ............................................................................  14

*Henderson v. Payless Shoes,*

No. 204-70, 2006 WL 346467 (S.D. Ga. 2/14/06) ...................................... 23

*Hertz v. Woodbury County, Iowa*,
   566 F.3d 775 (8th Cir. 2009)................................................................20, 21, 22, 23

*In re Coordinated Pretrial Proceedings in Petroleum
Products Antitrust Litig.*,
   691 F.2d 1335 (9th Cir. 1982).......................................................... 16

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1988)............................................................................. 23

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988).............................................................. 15

*Morgan v. Family Dollar Stores, Inc.*,
   551 F.3d 1233 (11th Cir. 2008)........................................................... 15

*Program Engineering, Inc. v. California Jockey Club*,
   No. 77-2454, 1984 WL 2931 (N.D. Cal. 1/20/84)....................................... 16

*Reeves v. Int'l. Tel. and Tel. Corp.*,
   616 F.2d 1342  (5th Cir. 1980)........................................................... 14

*Reich v. Dep't of Conservation and Nat. Res.*,
   28 F.3d 1076 (11th Cir. 1994)........................................................ 17, 18

*Rickards v. Canine Eye Registration Found, Inc.*,
   704 F.2d 1449 (9th Cir. 1983)........................................................... 15

*Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.*,
   637 F.2d 1376 (9th Cir. 1981) .......................................................... 15

*Slimani v. JW2657 Corp.*,
   No. 513-17864, 2016 WL 3002813
   (Palm Beach Cty. Cir. Ct. 5/25/16)............................................................. 15

*Weinberg v. Whatcom County*,
   241 F.3d 746 (9th Cir. 2001) ........................................................................... 15


**<u>STATUTES</u>**

29 U.S.C. §§ 201-219 ........................................................................ 1

29 U.S.C. § 206(a) ............................................................................ 13

29 U.S.C. § 207(a)(1) ....................................................................... 14

29 U.S.C. § 255(a) ........................................................................ 1, 23

**MAY IT PLEASE THE COURT:**

DIRECTV, LLC ("DIRECTV")[1] respectfully submits this Memorandum in Support of its Motion for Summary Judgment No. 4:  Plaintiffs Cannot Provide Competent Evidence of Damages and Cannot Show DIRECTV Had Knowledge of Their Alleged Unpaid Work; Alternatively, Plaintiffs Cannot Show a Willful Violation of the FLSA.

Seven years after this dispute arose, Plaintiffs' inability to present any competent evidence to a jury regarding their alleged damages or to show actual or constructive knowledge on DIRECTV's part provides two independent grounds for dismissal of their claims against DIRECTV under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA").  Alternatively, Plaintiffs cannot demonstrate a willful violation of the FLSA, which limits their claims to the two-year statute of limitations.  *See* 29 U.S.C. §255(a).

## INTRODUCTORY STATEMENT

Like every other case on this Court's docket, Plaintiffs have the burden of proving their damages.  And, this is a wage case – the damages (to the extent they even exist) are not subject to considerable discretion by a fact-finder.  If a plaintiff is entitled to compensation for work performed in, for example, the week of March

---

[1] DIRECTV, Inc. merged into DIRECTV, LLC effective January 1, 2012.

1, 2011, he or she bears the burden of demonstrating to the jury how much he is owed for that week of work.

Similarly, while Plaintiffs are not expected by DIRECTV to pencil their numbers down to the penny, the law at least requires that they be able to tell DIRECTV – and the Court – with some reasonable evidentiary basis how much they believe they are owed and how those numbers are calculated.  Otherwise, DIRECTV and the Court (and a jury) would be left to speculate about the amount and extent of Plaintiffs' purported unpaid wages.  After *seven years* of litigation, Plaintiffs cannot do that – a fact they all must admit.

Most telling, after seven years of work, review of millions of lines of data, and the engagement of an expert by Plaintiffs, they offer only wildly nonsensical, wide-ranging estimates of the wages to which they think they may be owed.  For example, as to the first three Plaintiffs:

| Plaintiff | Damages Claims per Initial Disclosures | Sworn Interrogatory Answers regarding Claimed Damages |
|---|---|---|
| Kris Battle | $6,581 to $128,300 | $58,725 to $159,210 |
| Russell Blakely | $51,275 to $162,300 | $41,300 to $121,700 |
| Rodney Bridges | $16,298 to $61,184 | $18,703.13 to $75,281.25 |

The spread between Plaintiffs' calculations is so large that Plaintiffs' estimates should not — and cannot — be credited.  Plaintiffs were all asked in their depositions to explain how these numbers were calculated; none could answer.  Plaintiffs were asked in their depositions to explain the reasons for the ranges;

none could answer.  Mr. Bridges's estimates are down to the penny, but he testified

he does not know how the numbers were calculated and does not have any records

of any time worked, at all.[2]  This inability to articulate damages is nothing new.

On February 22, 2010, four representative plaintiffs filed suit against

DIRECTV seeking unpaid wages and overtime for themselves and approximately

1,300 "opt-in" technicians in a case nearly identical to the one at bar.[3]  In fact, all

but two[4] of the eighteen Plaintiffs involved in this case were opt-in plaintiffs in the

2010 *Lang* lawsuit.

DIRECTV moved to dismiss portions of the *Lang* suit[5] and strike the class

allegations,[6] arguing, in part, that the individualized determinations of whether

---

[2] *See* Ex. 11, Deposition of Rodney Bridges, pp. 18:3-21, 151: 20-152:4, and 193:16-24.

[3] *See Christian Lang, et al. v. DIRECTV, Inc., et al*, No. 10-1085, United States District Court for the Eastern District of Louisiana.  The case was originally filed in state court but subsequently removed to federal court.  *See* Ex. 88, Notice of Removal, filed 4/9/10, (Doc. No. 1).

[4] Austin Carpenter and Geno Marine did not opt-in to the *Lang* lawsuit.  However, Geno Marine did opt-in to the *Arnold* lawsuit, which was filed on March 2, 2010, and involves facts nearly identical to those at bar.  *See Jamie Arnold, et. al. v. DIRECTV, Inc., et al*, No. 10-00352, United States District Court for the Eastern District of Missouri; *see also*, First Amended Complaint, ¶¶ 91-93, (Doc. No. 26-1).

[5] Ex. 89, DIRECTV's Motion to Dismiss Certain Claims, filed 5/14/10 (Doc. No. 19), *Christian Lang, et al. v. DIRECTV, Inc., et al*, No. 10-1085, United States District Court for the Eastern District of Louisiana.

[6] Ex. 90, DIRECTV's Motion to Strike Class Allegations, filed 5/14/10 (Doc. No. 20), *Christian Lang, et al. v. DIRECTV, Inc., et al*, No. 10-1085, United States District Court for the Eastern District of Louisiana.

3

damages are owed to the plaintiffs at all and the amount of any damages owed made the plaintiffs' claims inappropriate for class-wide relief.[7]

In response to that argument, Plaintiffs (through the same lawyers) stated that "[t]he calculations of damages will be easy" and that "[a] simple calculation of the amount illegally withheld from each employee's check will enable a quick determination that can be used to formulate a fair and efficient resolution of the claims."[8]  Plaintiffs continued:

> Whether each member of the class was damaged by the action of DIRECTV in concocting and implementing the chargeback scheme is a simple inquiry that can be fleshed out by comparing the chargebacks to the credits for work performed. This data can be ascertained with simple initial discovery requests and will not be burdensome or unwieldy.[9]

The district court denied the motion to strike the class allegations, granting the Plaintiffs latitude to fulfill their commitment to the court at a later date. [10]

---

[7] Ex. 91, DIRECTV's Memorandum in Support of Motion to Strike Class Allegations, filed 5/14/10, (Doc. No. 20-1), at 13-16, *Christian Lang, et al. v. DIRECTV, Inc., et al*, No. 10-1085, United States District Court for the Eastern District of Louisiana.

[8] Ex. 92, p. 5, Plaintiffs' Opposition to Motion to Strike Class Allegations, filed 6/1/10, (Doc. No. 28), *Christian Lang, et al. v. DIRECTV, Inc., et al*, No. 10-1085, United States District Court for the Eastern District of Louisiana.

[9] *Id.* at 7.

[10] Ex. 93, Order and Reasons, p. 39, entered 8/13/10, (Doc. No. 42). *Christian Lang, et al. v. DIRECTV, Inc., et al*, No. 10-1085, United States District Court for the Eastern District of Louisiana.

Plaintiffs have since been given every shred of data that DIRECTV has about their work orders – millions of lines of data.  And in the last seven years, they have taken dozens of depositions in this and other cases, all over the country. They have issued subpoenas to third-parties, and they even hired an expert in *Lang* to assist with the calculation of damage awards for sixteen of the eighteen Plaintiffs in this case.  Still, Plaintiffs cannot articulate that number.

And, it is not the case that DIRECTV has not tried to discover what Plaintiffs' damages are in this case.  DIRECTV served written discovery and took the deposition of each Plaintiff and specifically asked each Plaintiff what he believes his damages are and how he came up with that number.   Plaintiffs responded with wide ranges, providing hourly and damages estimates in their First Amended Complaint, Initial Disclosures, and Verified Interrogatory Responses that were often inconsistent and regularly ranged *over $100,000* between the low and high ends – for each Plaintiff.[11]

---

[11] *See* First Amended Complaint, pp. 22- 54, at ¶¶ 96-98, 102-104, 108-110, 120-122, 126-128, 132-134, 156-158, 162-164, 168-170, 180-182, 186-188, 192-194, 198-200, 204-206, 210-212, 216-218, 234-236, 240-242, (Doc. 26-1); Ex. 45, Initial Disclosures, pp. 14-15; Ex. 46, Verified Interrogatory Responses for Kris Battle, pp. 2-4, 5-7, at ¶¶ 3, 5; Ex. 47, Verified Interrogatory Responses for Russell Blakely, pp. 2-7, at ¶¶ 3,5; Ex. 48, Verified Interrogatory Responses for Rodney Bridges, pp. 2-6, at ¶¶ 3,5; Ex. 49, Verified Interrogatory Responses for Tanner Carden, pp. 2-6, at ¶¶ 3,5; Ex. 50, Verified Interrogatory Responses for Austin Carpenter, pp. 2-7, at ¶¶ 3,5; Ex. 51, Verified Interrogatory Responses for Douglas Ferren, pp. 2-6, at ¶¶ 3,5; Ex. 52, Verified Interrogatory Responses for Robert Field, pp. 2-6, at ¶¶ 3,5; Ex. 53, Verified Interrogatory Responses for Tyrone Kelley, pp. 2-6, at ¶¶ 3,5; Ex. 54, Verified Interrogatory Responses for Carl Kennedy, pp. 3-7, at ¶¶ 3,5; Ex. 55,Verified Interrogatory Responses for Ellon La Mothe, pp. 2-7, at ¶¶ 3,5; Ex. 56, Verified Interrogatory Responses for Geno Marine, pp. 2-6, at ¶¶ 3,5; Ex. 57, Verified Interrogatory Responses for Andrew Mitchell,

When asked about those ranges and how they came up with the estimates they provided (as those estimates have all included a wide, but precise, range), Plaintiffs regularly refused or were unable to answer and testified that they would defer to their counsel on their damages.[12]  For example, Plaintiff Kris Battle, who previously opted-in to the *Lang* suit, testified that his attorney – and not him – knows whether his damages estimate was accurate and that he did not know why there was a $100,000 gap between the high and low ends of his damages estimate.[13]  When asked about the inconsistencies between his Initial Disclosures

---

pp. 2-7, at ¶¶ 3,5; Ex. 58, Verified Interrogatory Responses for Jose Morales, pp. 2-6, at ¶¶ 3,5; Ex. 59, Verified Interrogatory Responses for Ricardo Newman, pp. 2-6, at ¶¶ 3,5; Ex. 60, Verified Interrogatory Responses for Jayson Porter, pp. 3-7, at ¶¶ 3,5; Ex. 61, Verified Interrogatory Responses for Dusty Prestridge, pp. 3-7, at ¶¶ 3,5; Ex. 62, Verified Interrogatory Responses for James Renkl, pp. 2-7, at ¶¶ 3,5; Ex. 63, Verified Interrogatory Responses for Kenneth Rogers, pp. 2-6, at ¶¶ 3,5; *see also* Ex. 64, Affidavit of Julie Schiff authenticating Damages Estimates Chart; Ex. 65, Damages Estimates Chart.

[12] Ex. 1, Deposition of Kris Battle, taken on 10/6/11 in *Christian Lang, et al. v. DIRECTV, Inc., et al*, No. 10-1085, United States District Court for the Eastern District of Louisiana ("Battle Depo. I"), p. 119:19-22; Ex. 3, Deposition of Kris Battle II, pp. 164:24-165:23; Ex. 9, Deposition of Russell Blakely II, pp. 208:12-210:24; Ex. 11, Bridges Depo., pp. 18:3-21, 151: 20-152:4, and 193:16-24; Ex. 13, Deposition of Tanner Carden ("Carden Depo."), pp. 187:21- 188:11; Ex. 15, Deposition of Austin Carpenter ("Carpenter Depo."), pp. 53:9-12; Ex. 18, Deposition of Robert Field ("Field Depo."), p. 235:15-236:21; Ex. 19, Deposition of Tyrone Kelley, ("Kelley Depo."), pp. 207: 3-208:10 and 211:20-212:14; Ex. 23, Deposition of Ellon La Mothe ("La Mothe Depo."), pp. 323:14-324:8; Ex. 35, Deposition of Jayson Porter ("Porter Depo."), pp. 246;15-247:22; Ex. 41, Deposition of James Renkl ("Renkl Depo."), pp. 127:10-15 and 127: 21-128:6; Ex. 43, Deposition of Kenneth Rogers ("Rogers Depo."), pp. 208:19-210:8.

[13] Ex. 3, Battle Depo. II, pp. 164:24-165:23.

and Verified Interrogatory Responses, he testified: "Right. Yeah. I do not know why. I may have misunderstood the question. I can't speak to that reason."[14]

Similarly, James Renkl, who also previously opted-in to the *Lang* lawsuit, testified, "I have no idea," when asked if the damages estimate contained in his Initial Disclosures was accurate.[15]   When asked if the damages estimate in his Verified Interrogatory Responses was correct, he testified: "Who made this?  Who calculated this? . . . I don't know.  I mean, I don't know how would – how this was – how this was put together really."[16]   In his Initial Disclosures, Mr. Renkl estimated his damages to range from $4,021 to $29,490, and in his Verified Interrogatory Responses, he estimated his damages to range from $3,403.13 to $12,043.75.[17]   Plaintiffs consistently testified that they did not consult any documents when estimating their damages.   Indeed, Plaintiffs confirmed they discarded documents that could have provided damages information (even after

---

[14] *Id.* at p. 167:6-15.

[15] Ex. 41, Renkl Depo., p. 127:10-15.

[16] *Id.* at  p. 127: 21-128:6.

[17] *See* Ex. 45, Initial Disclosures, p. 15; Ex. 62, Verified Interrogatory Responses of James Renkl, pp. 2-3, at ¶ 3.

they joined the litigation).[18]  And, notably, Plaintiffs have not identified an expert or any other witness that could possibly present those calculations to the jury.

The end result is that DIRECTV – and the Court – are left having to guess what Plaintiffs are owed.  This is not how litigation works.  At the end of the day, Plaintiffs have no witness that they can offer the trier of fact to say how much they are owed and the basis for that number.  They have no competent testimony on this issue, and for that reason, their claims should be dismissed.

Even with all the data available to Plaintiffs, their countless lawyers, and even an expert, Plaintiffs still cannot calculate their hours and rates of pay.  If the Plaintiffs have not been able to do it in seven years, it is incredulous to think DIRECTV could have known that information in real time.  In addition to the absence of any competent evidence of their damages, Plaintiffs cannot show that DIRECTV knew or should have known that they were performing work for which they were not paid.  Even more, they cannot show that DIRECTV willfully or recklessly disregarded such information or caused the Plaintiffs to perform work for which they were not paid.

This Court should dismiss Plaintiffs' claims against DIRECTV because they cannot prove their alleged damages, and they certainly cannot prove that

---

[18] *See, e.g.*, Ex. 11, Bridges Depo., p. 18:3-21; Ex. 15, Carpenter Depo., pp. 25:1-27:7; Ex. 28, Deposition of Geno Marine ("Marine Depo."), pp. 249:15-252: 20; Ex. 33, Deposition of Ricardo Newman ("Newman Depo."), pp. 142:13-143:20.

DIRECTV knew or should have known that they were performing work for which they were not properly paid.  Alternatively, the Court should find that any violation of the FLSA by DIRECTV was not willful and limit Plaintiffs' claims to the normal two-year statute of limitations.

## I.   Statement of Undisputed Material Facts

DIRECTV incorporates by reference the facts and background information included in support of its preceding motions for summary judgment.  The facts relevant to this Motion are relatively few and discreet.

### A.   *Plaintiffs' Work as Independent Contractors for Independent Subcontracting Companies*

All of the Plaintiffs sought to be engaged by a subcontracting company — not DIRECTV — and negotiated their engagement directly with the company's representative.[19]   DIRECTV is not involved in a subcontracting company's decision to hire employees or engage independent contractors, does not control whether the subcontractor classifies them as an employee or independent

---

[19] Ex. 2, Contractor Agreement (Exhibit 3 to Battle Depo. I); Ex. 9, Blakely Depo. II, pp. 43:20-44:12, 48:14-16, 107:4-11, and 160:25-162:11; Ex. 11, Bridges Depo., pp. 33:14-34:9, 39:1-8; Ex. 13, Carden Depo., pp. 28:16-30:6, 32:14-34:10, and 35:22-25; Ex. 15, Carpenter Depo., pp. 53:9-12; Ex. 18, Field Depo., p. 88:18-21 and 74:3-75:17; Ex. 19, Kelley Depo. pp. 50:19-21, 52:7-25 and 77:4-24; Ex. 20, Kennedy Depo., pp. 71:5-74:24, 74:3-75:17, 84:3-85:7, 88:5-19, and 91:8-92:7; Ex. 23, La Mothe Depo., pp. 58:11-13 and 59:8-11; Ex. 28, Marine Depo., p. 77:10-12; Ex. 30, Mitchell Depo., pp. 61:6-11, 64:17-22, and 69:16-20; Ex. 32, Morales Depo., p. 24:2-23 and 42:19-43:25; Ex. 33, Newman Depo., pp. 182:22-183:5; Ex. 37, Deposition of Dusty Prestridge ("Prestridge Depo."), pp. 36:6-15; 43:5-11, and 157:23-158:5; Ex. 35, Porter Depo., pp. 124:5-7 and 137:19-21; Ex. 41, Renkl Depo., pp. 32:9-36:25, 48:23-49:4; Ex. 43, Rogers Depo., pp. 63:10-11 and 214:24-215:3.

contractor, and does not dictate the manner and method of payment for their work.[20]   DIRECTV did not issue any paychecks to Plaintiffs nor did it maintain any personnel, pay, or time records on them.[21]   DIRECTV witnesses consistently testified they had no way of knowing how many hours subcontractor-engaged technicians worked or how or how much the subcontracting companies paid them.[22]   And, Plaintiffs consistently testified that they never complained to anyone at DIRECTV about any pay or other work-related issues, never told anyone that they were working overtime or performed work for which they were not compensated, and never told anyone at DIRECTV how and what the

---

[20] Ex. 85, Declaration of Michael Crawford, dated 1/6/11 ("Crawford Declaration"), filed in *Perez v. Lantern Light Corp., et al.*, USDC, W.D. Wash., Civ. Action No. 12-01406, (R. Doc. No. 129), at ¶ 8; *see also* Ex. 82, Deposition of Derrick Whiteside (DIRECTV Eastaboga Site Manager) ("Whiteside Depo."), p. 120:1-7; Ex. 74, Deposition of Tim Cole ("Cole Depo."), pp. 138:19-139:19; Ex. 9, Blakely Depo. II, p. 107:4-11, 161:5-16; Ex. 8, Media Net Installer Agreement (Exhibit 21 to Blakely Depo. I); Ex. 7, Pay Report by TB Consulting to R. Blakely (Exhibit 20 to Blakely Depo I); Ex. 11, Bridges Depo., pp. 36:25-37:25 and 39:9-40:9; Ex. 13, Carden Depo., pp. 23:15-24:25, 36:13-39:11, and 89:12-90:13; Ex.15, Carpenter Depo. pp. 39:20-40:15; Ex. 18, Field Depo., p. 61:6-23 and 85:24-86:4; Ex.19, Kelley Depo., pp. 59:2-10 and 132:4-7; Ex. 20, Kennedy Depo., pp. 74:3-75:17, 84:3-85:7, 88:20-90:23, and 169:5-25; Ex. 28, Marine Depo., pp.  77:10-12; Ex. 32, Morales Depo., 42:19-43:25, 44:2-6 and 45:7-11; Ex. 33, Newman Depo., pp. 182:22-183:5; Ex. 37, Prestridge Depo., pp. 158:5-14 and 262:11-263:6; Ex. 35, Porter Depo., pp. 139:24-140:10; Ex. 41, Renkl Depo., pp. 35:10-14 and 41:9-16; Ex. 43, Rogers Depo., pp. 63:10-64:11 and 70:17-71:5.

[21] Ex. 81, Deposition of Kyle Wells, taken in *Roeder v. DIRECTV, Inc.*, N.D. Iowa Case No. 5:14-cv-04091-LTS on May 24, 2016 ("Wells Depo. II"), pp. 275:18-276:16.

[22]   Ex. 69, Deposition of Richard Alexander (DIRECTV Site Manager Montgomery/Columbus/Dothan Sites) ("Alexander Depo."), p. 136:23-25; Ex. 76, Deposition of Donna Hester (DIRECTV Site Manager Florence/Madison Sites) ("Hester Depo."), pp. 145:19-24, 147:17-23, and 149:10-16; Ex. 68, Deposition of Eddie Aldridge (DIRECTV Site Manager Madison Site) ("Aldridge Depo."), pp. 70:25-71:12 and 194:11-13; Ex. 82, Deposition of Derrick Whiteside (DIRECTV Site Manager Eastaboga Site) ("Whiteside Depo."), pp. 119:13-23.

subcontracting companies paid them.[23]   Indeed, the sum of the information

DIRECTV has related to subcontractor technicians is the data contained in its

Siebel database, which is limited to the technician's name, preferred starting

address, schedule, skill set, professional certifications, and work order history.[24]

### B.   <u>The Limited Information Available From Siebel</u>

Siebel is a work order system, not a time-keeping one.  Siebel is used by

technicians, vendors, DIRECTV, and contractors to facilitate the issuance,

performance, and completion of work orders.  Though Siebel does record the status

and completion of work orders, it does not record the actual time worked by

technicians,[25] and it does not always reflect the actual identity of the technician

servicing an order or the status of that order.[26]   Siebel does not contain any

---

[23] Ex. 3, Battle II Depo., p. 157:9-11; Ex. 4, Blakely I Depo., p. 203:7-14;  Ex. 11, Bridges Depo., p. 129:14-25; Ex. 13, Carden Depo., p. 92:9-16; Ex. 18, Field Depo., p.  125:2-11; Ex. 30, Mitchell Depo., pp.104: 19-105: 5, 11:9-14; Ex. 35, Porter Depo., p. 243: 11-14.

[24] Ex. 71, Deposition of Mary Ellen Baumgardt, taken in *Arnold, et al. v. DIRECTV, Inc.*, *et al.*, USDC, E.D. Mo., Civ. Action No. 10-00352 on July 13, 2011 ("Baumgardt Depo.") (*filed under seal*), pp. 38:10-39:21; Ex. 70, Deposition of Christopher Altomari, taken in *Arnold, et al. v. DIRECTV, Inc., et al.*, USDC, E.D. Mo., Civ. Action No. 10-00352 on March 5, 2015 ("Altomari Depo."),  pp. 216:5-217:19 (*filed under seal*); Ex. 80, Deposition of Kyle Wells, taken in *Arndt, et al. v. DIRECTV, LLC*, American Arbitration Association No. 30-160-00625-11 on September 11, 2015 ("Wells Depo. I"), pp. 65:18-71:1 (*filed under seal*); Ex. 80, Wells Depo. II, pp. 141:19-143:12 and 270:23-271:8 (*filed under seal*).

[25] *See* Ex. 3, Battle Depo. II, p. 68:3-22.

[26] As Plaintiffs explained, the failure of their technician number to be linked to a particular work order could be attributed to the fact that the subcontracting company reassigned it at some point in the day, they traded a work order with another technician, or that they performed the work order under another technician's number – a practice referred to as "ghosting."  *See* Ex. 15, Carpenter Depo., pp. 82:23-83:14; Ex. 20, Kennedy Depo., pp. 38:13-

11

information about how or how much any Plaintiff was paid for installing and servicing DIRECTV products.[27]  And, years ago, every line of data regarding every technician in this case was provided to Plaintiffs' counsel.

C.   *Plaintiffs' Inconsistent and Speculative*
*Testimony Regarding Their Damages*

As a matter of law, Plaintiffs must prove every element of their case and must do so with competent evidence.  Plaintiffs consistently testified that they could not explain how their "damages" were calculated, and could not substantiate the wild range of numbers in their Initial Disclosures or Verified Interrogatory Responses.  Here, of course, the law does not require plaintiff himself to be able to testify about his damages.  But, there must be someone.  Plaintiffs have disclosed no experts to testify or any other witness that could have such knowledge.  So, at this late stage of the case, none of the 18 Plaintiffs have a single witness who can articulate any purported damages.

## II.   <u>**Argument**</u>

Federal Rule of Civil Procedure 56(a) "mandates the entry of summary

---

39:14 and 118:20-25;  Ex. 23, La Mothe Depo., p. 105: 16-20; Ex. 30, Mitchell Depo., p. 148: 22-24 and 149:13-15.  For example, Plaintiff Jayson Porter testified that he did not perform any of the work orders associated with one of his technician identification numbers because he ghosted during the whole of his time with that subcontractor.  Ex. 35, Porter Depo., pp. 76:19-77:7.

[27] Ex. 80, Wells Depo. II, pp. 121:16-122:5, 123:14-125:9, 141:19-143:12, 270:23, and 271:8.

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Plaintiffs bear the burden of showing DIRECTV knew about the work that forms the basis of their claims, proving their damages as a matter of "just and reasonable inference," and showing willfulness on DIRECTV's part.  They cannot meet their burden with respect to any of these issues.

A. *Plaintiffs' Claims Should be Dismissed*
   *Because They Cannot Prove Their Alleged Damages.*

The FLSA requires all employers to pay covered employees a minimum wage for hours worked.[28]  Additionally, employers must pay covered employees who work more than forty hours a week one and one-half times their regular pay rate for each hour of overtime.[29]  To prevail on any claim for an alleged employer violation of the FLSA, a plaintiff must establish employee status and that the employer failed to provide the compensation required by the FLSA.[30]  Even after those threshold requirements are satisfied, an FLSA plaintiff must show "with definite and certain evidence, that he performed work for which he was not

---

[28] 29 U.S.C. § 206(a).

[29] 29 U.S.C. § 207(a)(1).

[30] *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007).

13

properly compensated."[31]   Finally, summary judgment is appropriate where a plaintiff cannot provide evidence of damages,[32] and this axiomatic legal principle clearly applies to FLSA claims.[33]

The Court has the discretion to dismiss a plaintiff's claim on summary judgment if the plaintiff fails to offer evidence in support of an element of his claim (and, here, proof of damages is part of the *prima facie* case),[34] and the claim is one for which the plaintiff bears the burden of proof at trial.[35]

In *Weinberg*, the Court dismissed plaintiff's claims on summary judgment for his failure to offer competent evidence on damages, stating that "[s]ummary judgment is appropriate where appellants have no . . . witnesses or designated

---

[31] *Reeves v. Int'l. Tel. and Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980).

[32] *See Harville v. Westward Communications*, 433 F.3d 428 (5th Cir. 2005) (affirming district court holding that plaintiff failed to present any evidence that she was not properly compensated for overtime); *see also Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230 (10th Cir. 2012) (holding that it is plaintiff's burden to "produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference" and absent such showing, summary judgment is proper).

[33] *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 407 (8th Cir. 2013) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946)) (holding that FLSA plaintiffs must prove the existence of damages and that summary judgment was appropriate because they failed to provide any evidence of actual damages).

[34] *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008); *Slimani v. JW2657 Corp.*, No. 513-17864, 2016 WL 3002813 (Palm Beach Cty. Cir. Ct. 5/25/16).

[35] *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *Weinberg v. Whatcom County*, 241 F.3d 746, 751 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986)).

documents providing competent evidence from which a jury could fairly estimate damages."[36]  The Court went on to state that plaintiffs "must provide evidence such that the jury is not left to speculation or guesswork in determining the amount of damages to award."[37]

Furthermore, even if the opposing parties present conflicting views on the amount of damages and the moving party faces an initial presumption against the granting of summary judgment, this burden may still be overcome with respect to the admissibility or relevancy of certain damages calculations if the calculations are "so unreliable or flawed that they could not properly form the basis of a reasonable jury verdict."[38]  Importantly, the Eleventh Circuit follows this Rule 56 rubric.[39]

Although DIRECTV disputes it was Plaintiffs' employer, it produced all the data in its possession for these Plaintiffs.  Nevertheless, as of today, Plaintiffs remain unable to identify the damages they believe DIRECTV owes them.

---

[36] *Weinberg*, 241 F.3d at 751 (citing *Rickards v. Canine Eye Registration Found, Inc.*, 704 F.2d 1449, 1452 (9th Cir. 1983)).

[37] *Id.* (citing *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988)); *see also Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.*, 637 F.2d 1376, 1381 (9th Cir. 1981); *Dolphin Tours, Inc. v. Pacifico*, 773 F.2d 1506, 1509 (9th Cir. 1985)).

[38]*Program Engineering, Inc. v. California Jockey Club*, No. 77-2454, 1984 WL 2931, at *3 (N.D. Cal. 1/20/84) (citing *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 691 F.2d 1335 (9th Cir. 1982)).

[39] *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

Plaintiffs' contradictory, vague testimony does not demonstrate that they are capable of proving "the amount and extent" of their damages. The evidence on which Plaintiffs rely to establish their damages (outside of their own inconsistent and admittedly speculative sworn testimony) does not provide a basis from which a fact finder could even infer the amount and extent of that purported work and any alleged damages.

Nor do Plaintiffs come forward with any documents or time records showing the hours they actually worked, any receipts for the unreimbursed business expenses they seek to recover, and, for the vast majority, there are no documents or pay records at all showing what they actually received from these subcontracting companies – a failure of proof especially egregious for those Plaintiffs who continued to perform work orders after they were represented by counsel, filed suit, and admitted that they had their pay records and receipts, but threw them away.[40]   Without any link to actual documents or evidence, Plaintiffs' damages estimates are nothing more than speculation.

After seven years of litigation, Plaintiffs are still incapable of telling the factfinder the amount of their claimed damages.   Along the way, they have

---

[40] Ex. 3, Battle Depo. II., pp. 59:19-24 and 68:20-22; Ex. 9, Blakely II Depo, p. 257:9-17; Ex. 11, Bridges Depo, pp.18:3-21, 127:11-17, and 143:21-23; Ex. 13, Carden Depo, p.144: 10-19; Ex. 15, Carpenter Depo., pp. 25:1-27:7; Ex. 18, Field Depo., pp. 92:18-19, 163: 20-22; Ex. 20, Kennedy Depo., pp. 163:9-164:25; Ex. 28, Marine Depo., pp. 104:12-14, 249:15-252: 20, 256:11-257:14; Ex. 30, Mitchell Depo., pp. 190: 22-200:24; Ex. 32, Morales Depo., pp. 15:25-16:5-18; Ex. 33, Newman Depo., pp. 142:13-143:20; Ex. 37, Prestridge Depo, p. 110: 5-23.

repeatedly sworn under oath to varying amounts of hours, pay rates, and business expenses – it is clear that there is no "sound foundation" for these damages and summary judgment is appropriate.[41]

> B.   *Plaintiffs' Claims Should be Dismissed*
> *Because They Cannot Show Actual or*
> <u>*Constructive Knowledge on DIRECTV's Part.*</u>

To prevail on their claims against DIRECTV, Plaintiffs must show that (1) they "worked overtime without compensation" *and* (2) DIRECTV "knew or should have known of the overtime work." *See  Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314-15 (11th Cir. 2007); *see also, e.g., Reich v. Dep't of Conservation and Nat. Res.,* 28 F.3d 1076, 1081-82 (11th Cir.1994).  Constructive knowledge here "is measured in accordance with [the employer's] 'duty . . . to inquire into the conditions prevailing in [its] business.'"  *Reich*, 28 F.3d at 1082 (citing *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969) (internal citation omitted)).  But, "a mere scintilla of evidence that [an employer] had actual or constructive knowledge of [a plaintiff's] overtime work" will not suffice to defeat summary judgment.  *Id.* (affirming summary judgment dismissing plaintiffs' FLSA claims where plaintiffs testified no one told them to work off the clock, and they did not record overtime hours on their time sheets or inform anyone of their overtime work).

---

[41] *DiSantis v. Morgan Properties Payroll Servs., Inc.*, No. 09-6153, 2010 WL 3606267, at *13-15 (E.D. Pa. 9/16/10).

It is undisputed DIRECTV did not have actual knowledge of the hours Plaintiffs were working or how or how much they were being paid for those hours. DIRECTV had no say or role in how the subcontracting companies that engaged Plaintiffs classified them or paid them or how much they paid them.[42]  DIRECTV witnesses consistently testified they did not know how many hours subcontractor-engaged technicians worked or how or how much the subcontracting companies paid them.[43]  DIRECTV certainly did not issue any paychecks to Plaintiffs, and it did not maintain any payroll or other employment records for the Plaintiffs.[44]

And, in fact, Plaintiffs consistently testified that they never went to anyone at DIRECTV with any pay or other work-related issues, never told anyone that they were working overtime or performed work for which they were not compensated, and never told anyone at DIRECTV how and what the subcontracting companies paid them.[45]  Indeed, Plaintiffs consistently testified that neither they nor the subcontracting companies that engaged them even tracked

---

[42] *See supra* note 20.

[43] *See* Ex. 69, Alexander Depo., p. 136:23-25; Ex. 76, Hester Depo. pp. 145:19-24, 147:17-23, and 149:10-16; Ex. 68, Aldridge Depo., pp. 70:25-71:12, and 194:11-13; Ex. 82, Whiteside Depo., pp. 119:13-23.

[44] Ex. 81, Wells Depo. II, pp. 275:18-276:16.

[45] Ex. 3, Battle II Depo., p. 157:9-11; Ex. 4, Blakely I Depo., p. 203:7-14;  Ex. 11, Bridges Depo., p. 129:14-25; Ex. 13, Carden Depo., p. 92:9-16; Ex. 18, Field Depo., p. 125: 2-11; Ex. 30, Mitchell Depo., pp.104: 19-105: 5, 11:9-14; Ex. 35, Porter Depo., p. 243: 11-14.

their hours,[46] much less reported or communicated those hours to DIRECTV. There is simply no evidence DIRECTV had any actual or constructive knowledge of Plaintiffs' allegedly unpaid work.

Plaintiffs will likely argue that the soft-scheduling of work orders through Siebel conferred constructive knowledge of Plaintiffs' hours on DIRECTV. This argument would be wrong for several reasons. First, it is undisputed that Siebel is a work order system, not a time-keeping one. Siebel is used to facilitate the issuance, performance, and completion of work orders. Second, while Siebel does record the status and completion of work orders, it does not record the actual time worked by technicians,[47] and does not always reflect the actual identity of the technician servicing an order or the status of that order.[48] In sum, Siebel data is not

---

[46] Ex. 3, Battle Depo. II., pp. 59:19-24 and 68:20-22; Ex. 9, Blakely II Depo, p. 257:9-17; Ex. 11, Bridges Depo, p. 127:11-17; Ex. 13, Carden Depo, p.144: 10-19; Ex. 15, Carpenter Depo., p. 26:3-6; Ex. 18, Field Depo., pp. 92:18-19 and 163: 20-22; Ex. 19, Kelley Depo., pp. 72:20-23; Ex. 20, Kennedy Depo., pp. 163:9-164:25; Ex. 28, Marine Depo., pp. 104:12-14, 249:15-252: 20, and 256:11-257:14; Ex. 30, Mitchell Depo., pp. 190: 22-200:10; Ex. 32, Morales Depo., pp. 15:25-16:5-18; Ex. 33, Newman Depo., pp. 142:13-143:3; Ex. 37, Prestridge Depo, p. 110: 5-23.

[47] *See* Ex. 3, Battle Depo. II, p. 68:3-22.

[48] As Plaintiffs explained, Siebel did not always accurately reflect which technicians performed which work orders because subcontracting companies reassigned work orders, technicians traded work orders with one another, and technicians performed work orders under other technicians' numbers – a practice referred to as "ghosting." *See* Ex. 1, Battle I, pp. 67:23-68:1; Bridges Depo, p. 104:11-15; Ex. 15, Carpenter Depo., pp. 82:23-83:14; Ex. 23, La Mothe Depo., p. 105: 16-20; Ex. 20, Kennedy Depo., pp. 38:13-39:14 and 118:20-25; Ex. 30, Mitchell Depo., p. 148: 22-24 and 149:13-15. For example, Plaintiff Jayson Porter testified that he did not perform any of the work orders associated with one of his technician identification numbers because he ghosted during the whole of his time with that subcontractor. Ex. 35, Porter Depo., pp. 76:19-77:7.

an accurate representation of which technicians actually performed which work orders and provides no information regarding the actula time worked by any technician.

The Eighth Circuit's decision in *Hertz* is particularly illustrative of the fact that a dispatch system (like Siebel) cannot create constructive knowledge on the part of an employer. *See Hertz v. Woodbury County, Iowa*, 566 F.3d 775, 781 (8th Cir. 2009). In *Hertz*, defendant's Computer Aided Dispatch ("CAD") program allowed the tracking of the "duty-status" of officers. The plaintiffs argued that the information that could be gleaned from the CAD program proved the defendant's constructive knowledge of alleged unpaid overtime hours. *Id.* at 779, 781. The district court rejected that argument, and the Eighth Circuit affirmed. The court explained that the CAD records "were not used for payroll purposes" and, instead, were "used so that dispatchers know what officers are available to respond to an emergency." *Id.* at 782. The CAD records "essentially amount to a daily report of officer activity and only are referenced to gain an overview of what types of emergencies occurred during a particular period, as opposed to the schedules of particular officers." *Id.* The Eighth Circuit held that the "district court correctly determined that the CAD logs could not serve as a basis upon which to find that the [defendant] had constructive knowledge of unpaid overtime." *Id.* A holding to

the contrary, the Eighth Circuit observed, would have required the defendant to "engage in actions beyond the 'reasonable diligence' the law requires of employers when determining whether their employees are working overtime." *Id.*

Here, as in *Hertz*, Siebel is a system that "essentially amount[s] to a daily report of [technician] activity" and cannot, as a matter of law, serve as a basis to find that DIRECTV had constructive knowledge of unpaid overtime. As discussed above, Siebel is used to queue work orders and allow DIRECTV and third parties to keep track of which work orders have been completed or cancelled. No one (including DIRECTV) has ever used Siebel as a payroll or timekeeping management system, and *Hertz* makes clear that DIRECTV was not required to mine the Siebel data to try to ascertain how long any particular technician has worked on any given day or any given week.[49] Finally, even if DIRECTV had an obligation to mine the inaccurate Siebel data (and it did not) to determine how many hours technicians were working, it had no knowledge regarding Plaintiffs' relationships with the subcontracting companies (*i.e.*, whether the subcontracting companies classified them as employees or independent contractors), and had no access to any pay data for technicians like Plaintiffs. Therefore, DIRECTV could

---

[49] Notably, when Plaintiffs' expert mined the Siebel data in an attempt to do just that, he could not.

not have reasonably determined whether they were being properly paid.[50]

Accordingly, summary judgment should be granted on Plaintiffs' claims for

purported unpaid overtime because there is no genuine issue of material fact that

DIRECTV had either actual or constructive knowledge of Plaintiffs' alleged

uncompensated time. *See Hertz*, 566 F.3d 775.

> C.   *Alternatively, Plaintiffs' Claims Should be Limited
>       to the Two-Year Statute of Limitations
>       <u>Because They Cannot Establish a Willful Violation of the FLSA.</u>*

The FLSA provides for a two-year statute of limitations.   29 U.S.C.

§ 255(a).   A plaintiff may extend that limitations period to three years only where

he shows, by a preponderance of the evidence, that the employer's violation of the

FLSA was willful.   *Id.; see also, e.g., McLaughlin v. Richland Shoe Co.*, 486 U.S.

128, 135 (1988); *Aly v. Butts County, Ga.*, 841 F. Supp. 1199, 1201 (M.D. Ga.

1994).

To show a willful violation, the plaintiff must show that "the employer either

knew or showed reckless disregard for the matter of whether its conduct was

prohibited by the FLSA."   *McLaughlin*, 486 U.S. at 133, 135.   The burden on the

plaintiff here is high, and proof of merely unreasonable or even negligent conduct

---

[50] Again, Plaintiffs and their experts were provided – years ago in the *Lang* litigation and recently in this case – all of the data in Siebel related to their technician identification numbers. Despite the complete production of all of this information, and the chance to digest it for years, Plaintiffs and their experts still readily admit that even they are unable to provide an accurate estimate of the hours that they worked each week or amounts they are allegedly owed. Yet, they expect that DIRECTV should have somehow known it all in real time.

by the employer will not suffice to extend the limitations period. *Id.; see also, Henderson v. Payless Shoes*, No. 204-70, 2006 WL 346467 (S.D. Ga. 2/14/06) (a merely negligent or unreasonable, but not reckless, violation is not willful and will not support extending the statute of limitations).  Of course, proof of a violation alone is not sufficient. *See, e.g., Aly*, 841 F. Supp. at 1201.

DIRECTV's Services Provider Agreements expressly require the subcontracting companies which contract to install DIRECTV systems comply with all applicable state and federal wage and hour laws.[51]  It is undisputed that DIRECTV did not hire, classify, or decide how or what to pay Plaintiffs for the work they performed on DIRECTV systems.[52]  In fact, DIRECTV witnesses have consistently testified that they did not know how or how much Plaintiffs were paid – as such matters were strictly within the discretion of the subcontracting companies that engaged Plaintiffs.[53] And, Plaintiffs consistently testified that they

---

[51] *See*, *e.g*., Ex. 66, Services Provider Agreement between DIRECTV, Inc. d/b/a DIRECTV Homes Services and BBI LLC ("BBI Services Provider Agreement"), p. 10, ¶ 19 (*filed under seal*).

[52] *See supra* note 20.

[53] *See* Ex. 69, Alexander Depo., p. 136:23-25; Ex. 76, Hester Depo. pp. 145:19-24, 147:17-23, and 149:10-16; Ex. 68, Aldridge Depo., pp. 70:25-71:12 and 194:11-13; Ex. 82, Whiteside Depo., pp. 119:13-23.

did not talk to anyone from DIRECTV about their work, or complain to any DIRECTV personnel about pay issues.[54]

In short, there is no evidence that DIRECTV could have even known that an FLSA violation occurred (if one occurred), much less any evidence that it facilitated or perpetuated a violation with reckless disregard. Plaintiffs cannot meet their burden for extending the statute of limitations, and their claims should be limited to the FLSA's two-year limitations period.

### III.   Conclusion

For all the foregoing reasons, this Motion should be granted, dismissing Plaintiffs' claims for want of proof as to damages and DIRECTV's actual or constructive knowledge. Alternatively, Plaintiffs' claims should be limited to two years prior to the filing of any claim against DIRECTV.

---

[54] *See* Ex. 3, Battle II Depo., p. 157:9-11; Ex. 4, Blakely I Depo., p. 203:7-14;  Ex. 11, Bridges Depo., p. 129:14-25; Ex. 13, Carden Depo., p. 92:9-16; Ex. 18, Field Depo., p. 125: 2-11; Ex. 30, Mitchell Depo., pp.104: 19-105: 5 and 11:9-14; Ex. 35, Porter Depo., p. 243: 11-14.

Respectfully submitted,

*s/ Erin E. Pelleteri*
ERIN E. PELLETERI
epelleteri@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
201 St. Charles Avenue, Suite 3600
New Orleans, LA  70170
(504) 566-8617
(Admitted pro hac vice on 01/20/2015)


s/*Julie Schiff*
JULIE SCHIFF
jschiff@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Wells Fargo Tower
420 20th Street North, Suite 1400
Birmingham, Alabama  35203
(205) 328-0480

*s/ Patricia J. Martin*
PATRICIA J. MARTIN
PMartin@littler.com
LITTLER MENDELSON
One Metropolitan Square
211 North Broadway, Suite 1500
St. Louis, Missouri 63102
(314) 659-2011
(*Admitted pro hac vice on 01/16/2015*)


*Attorneys for DIRECTV, LLC*

25

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via CM/ECF e-file system on this 21st day of February, 2017, addressed to the following counsel on record for Plaintiffs:

Jesse B Hearin, III, Esq.
HEARIN LLC
1009 Carnation Street
Slidell, LA 70460
jbhearin@hearinllc.com

Todd C. Werts, *Admitted Pro Hac Vice*
Lear Werts LLP
2003 West Broadway, Suite 107
Columbia, Missouri 65203
werts@learwerts.com

Crystal R. Cook, *Admitted Pro Hac Vice*
Mo. Bar No. 66852
Lauren E. Luhrs, *Admitted Pro Hac Vice*
Mo. Bar No. 66053
Daniel M. Shaw, *Pro Hac Vice Forthcoming*
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
cook@stuevesiegel.com
Luhrs@stuevesiegel.com
shaw@stuevesiegel.com

*s/ Julie Schiff*_____