FILED

2017 Sep-14  AM 09:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KRIS BATTLE,** *et al.***,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:14-cv-02007-AKK** |
| **DIRECTV, L.L.C.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Kris Battle, Russell Blakely, Rodney Bridges, Nicholos Butts, Tanner
Carden, Douglas Ferren, Robert Field, Randall Hill, Bret Hughes, Earnest Jackson,
Tyrone Kelley, Carl Kennedy, Ellon La Mothe, Scott Manzo, Andrew Mitchell,
Jose Morales, Ricardo Newman, Jayson Porter, Dusty Prestridge, James Renkl,
Kenneth Rogers, Jonathan Summerlin, Mark Yates, Geno Marine, and Austin
Carpenter assert claims against DIRECTV, L.L.C. for violations of the Fair Labor
Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Doc. 26-1. Presently before the
court are DIRECTV's four issue-specific motions for summary judgment, docs. 78,
81, 83, 85,[1] which are fully briefed, docs. 79, 82, 84, 86, 94, 95, 96, 99, 104, 105,

---

[1] The motions are designated as follows: doc. 78 ("Plaintiffs Were Engaged as Independent
Contractors"), doc. 81 ("DIRECTV, LLC was not Plaintiffs' Joint Employer"), doc. 83 ("7(i)"),
and doc. 85 ("Damages").

106, 107, and ripe for review. For the reasons stated below, the fourth motion is due to be granted, and, as a result, this case is due to be dismissed.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine dispute of material fact. *Id.* at 323. The burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 244 (all

justifiable inferences must be drawn in the non-moving party's favor). Any factual dispute will be resolved in the non-moving party's favor when sufficient competent evidence supports that party's version of the disputed facts. *But see Pace v. Capobianco*, 238 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. FACTUAL BACKGROUND[2]

DIRECTV provides satellite television services and "sells its services on a subscription basis, necessitating the installation of equipment in its customers' homes to establish a connection to the DIRECTV network." Doc. 79 at 9.

---

[2] DIRECTV's motion to strike the declaration of Roy Lingley or, alternatively, to reopen discovery and extend the dispositive motion deadline, doc. 73, is **DENIED AS MOOT**, as it is not part of the evidence that the Plaintiffs have submitted in support of their opposition to summary judgment.

DIRECTV maintains a W2 technician work force and also contracts with various subcontracting companies, which provide purported independent contractor technicians. *Id.* The Plaintiffs were engaged by subcontracting companies to perform DIRECTV installation and related work. *Id.* DIRECTV, the subcontracting companies, and technicians coordinated the scheduling of work orders through a program known as Siebel, which "runs a script that pairs available technicians based on their 'technician profile' . . . with available customer requests for work." *Id.* at 15-16.[3]

## III. ANALYSIS

DIRECTV argues that it is due summary judgment for four independent reasons: (1) the Plaintiffs are independent contractors; (2) even if the Plaintiffs are employees, DIRECTV is not their joint employer; (3) even if the Plaintiffs are employees, DIRECTV is not liable based on the § 7(i) exemption; and (4) the Plaintiffs failed to present sufficient evidence of their damages. The court examines these arguments separately below.

### A. Plaintiff's Alleged Independent Contractor Status

DIRECTV first seeks summary judgment on the basis that the Plaintiffs are independent contractors, doc. 79, who do not qualify as "employees" under the

---

[3] The court will recite additional facts, where relevant, in discussing the various summary judgment motions.

FLSA, *Freund v. Hi-Tech Satellite, Inc.*, 185 F. App'x 782, 782 (11th Cir. 2006).[4]

In distinguishing between employees and independent contractors, the salient question is whether a worker is "dependent upon the business to which [he] render[s] service" as a "matter of economic reality." *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947). Thus, economic reality, rather than any label placed on the relationship by the parties, controls. Several factors guide the inquiry into the economic reality of the parties' relationship:

1. [T]he nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

2. [T]he alleged employee's opportunity for profit or loss depending upon his managerial skill;

3. [T]he alleged employee's investment in equipment or materials required for his task, or his employment of workers;

4. [W]hether the service rendered requires a special skill;

5. [T]he degree of permanency and duration of the working relationship;

6. [T]he extent to which the service rendered is an integral part of the alleged employer's business.

*Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013). "No one of these considerations can become the final determinant, nor can the collective

---

[4] An "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To "employ" is defined broadly as "to suffer or permit to work." 29 U.S.C. § 203(g). "Given the remedial purposes of the legislation, an expansive definition of employee has been adopted." *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976). However, "independent contractors" are not protected. *See Freund*, 185 F. App'x at 782.

answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor—economic dependence." *Usery*, 527 F.2d at 1311 (citing *Mednick v. Albert Enters., Inc.*, 508 F.2d 297 (5th Cir. 1975)). In other words, "[t]he purpose of weighing the factors is . . . to view them qualitatively to assess the evidence of economic dependence." *Antenor v. D & S Farms*, 88 F.3d 925, 933 (11th Cir. 1996). The ultimate determination of an individual's employment status is a question of law. *Id.* at 929. "Subsidiary findings are considered issues of fact." *Freund*, 185 F. App'x at 783 (citing *Patel v. Wargo*, 803 F.2d 632, 634 n.1 (11th Cir. 1986)).

As noted by the court in *Lang v. DirecTV, Inc.*, 801 F. Supp. 2d 532, 536 (E.D. La. 2011), courts have reached mixed results about whether satellite and cable installers are employees or independent contractors under the FLSA. Generally, courts have decided this issue after a trial. In this circuit in particular, most district courts that have faced this issue have found that a factual determination was necessary to properly assess the *Scantland* factors. *See Freund*, 185 F. App'x at 782 (upholding decision of trial court after bench trial that plaintiff was an independent contractor); *Parrilla v. Allcom Constr. & Installation Servs., LLC*, No. 6:08–cv–1967–Orl–3GJK, 2009 WL 2868432 (M.D. Fla. Aug. 31, 2009) (holding after bench trial that plaintiff was an employee); *Santelices v. Cable*

6

*Wiring*, 147 F. Supp. 2d 1313 (S.D. Fla. 2001) (finding genuine issues of material fact as to plaintiff's employment status).

## 1. *Control*

In a nutshell, DIRECTV contends that its control over the Plaintiffs' work is analogous to that in *Roslov v. DirecTV Inc.*, which held that "DIRECTV's installation standards and uniform requirements . . . are entirely consistent with the standard role of a contractor who is hired to perform highly technical duties," and that installers were independent contractors rather than employees.  Doc. 79 at 25 (quoting 218 F. Supp. 3d 965, 974 (E.D. Ark. 2016) (internal quotation marks omitted)). Specifically, DIRECTV alleges that the Plaintiffs "negotiated the terms of their engagement directly with a subcontractor representative," doc. 79 at 24, spent the "vast majority of their time" working "unsupervised," *id.* at 25, "were responsible for determining the manner and method by which the work orders would be performed," *id.*, established their own availabilities, *id.* at 26, and that, "once assigned a work order, [the Plaintiffs] retained a significant degree of flexibility and autonomy over their own schedules," including "decid[ing] which jobs to perform first," *id.* at 27.

The Plaintiffs allege that DIRECTV controlled work hours, the length of the work week, requests for time off, and the types of work assigned to technicians, doc. 94 at 13-14, 23, 26, and could stop assigning work to an installer in cases of

inadequate work or misconduct, doc. 95 at 12 n.30, 16 at n.48. It "dictat[ed] the manner and method of [installers'] work," including how to conduct the installation and "what words to use when talking to the customer," through the Standard Professional Installation Guide, from which installers were not allowed to deviate, and prohibited subcontractor technicians from performing cable installations for other companies not affiliated with DIRECTV. Doc. 94 at 11, 16-17, 24-25; *see* doc. 98-30 at 13, 15-16. Finally, DIRECTV dictated the clothing, grooming, and appearance of technicians, "including hair color, the number and location of body piercings and the visibility of tattoos." Doc. 94 at 14. Taking these facts as true, as it must at this juncture of the case, the court finds that they weigh against a finding, as a matter of law, that the Plaintiffs were independent contractors.

### 2.  *Opportunity for Profit or Loss*

The court also considers the "alleged employee's opportunity for profit or loss depending on his managerial skill." *Scantland*, 721 F.3d at 1312. Managerial skills include "control over price and choice of work location, advertising, and services provided." *Ingram v. Passmore*, 175 F. Supp. 3d 1328, 1336 (N.D. Ala. 2016) (citations omitted).

According to DIRECTV, "[o]nce certified, Plaintiffs became their own independent businesses, free to use their skills as they pleased and realize profits

through their business decisions." Doc. 79 at 28. Allegedly, installers made daily decisions that could impact their opportunity for profit or loss, including "their selection of materials, their control over overhead expenses, their performance of work with other entities, and their decisions regarding with which companies they would contract," doc. 106 at 8, their daily routes, the speed with which they completed work orders, their negotiation for the performance of custom labor, and their sales of the DIRECTV Protection Plan to customers, doc. 79 at 29-31.

The Plaintiffs contend that they "exercised no managerial skill that would translate into profit or loss," and that DIRECTV, which assigned the work orders, controlled the prices and work locations. Doc. 94 at 27. While the Plaintiffs admit they could earn additional income from performing custom work for customers, they contend that DIRECTV set the rates they could charge for such work. *Id.* at 15. Moreover, the Plaintiffs contend that their ability to choose their selection of materials and mitigate overhead expenses was limited by DIRECTV's requirements that they use "only DIRECTV-approved materials," "drive a vehicle that complied with DIRECTV's standards," and purchase uniforms and a vehicle placard from DIRECTV. *Id.* at 14-15.

Again, reviewing the facts in the light most favorable to the Plaintiffs, these facts weigh against a finding, as a matter of law, of independent contractor status.

### 3.  *Investment in Equipment and Materials*

DIRECTV argues that the Plaintiffs "made sizable investments" in "tools, phones, equipment, ladders, and other materials to perform installations, including vehicles and fuel." Doc. 79 at 31. The Plaintiffs do not dispute this, but contend that their investments should be weighed against those that DIRECTV has made in its distribution network, warehouses, and similar infrastructure. Doc. 94 at 30-31 (citing *Parilla*, 2009 WL 2868432 at *4).

This interpretation of *Parilla* misses the mark, as it held that the plaintiff "did not make any significant investment in capital or employ others," not that he did not make significant investments compared to those of the defendant, which the *Parilla* court did not consider in its analysis of this factor. 2009 WL 2868432 at *4. Accordingly, this factor weighs in favor of finding independent contractor status as a matter of law.

### 4.  *Special Skill*

DIRECTV asserts that, because the Plaintiffs underwent specialized training and required "particular skills" to perform installations, that this factor must weigh in favor of independent contractor status. Doc. 79 at 32-33 (citing *Freund*, 185 F. App'x at 784; *Santelices*, 147 F. Supp. 2d at 1320; *Roslov*, 218 F. Supp. 3d at 975).

The Plaintiffs contend that installation work does not require a special skill, citing deposition testimony in which it is described as requiring only "common

10

sense," "basic skills," and "general knowledge." Doc. 94 at 32 n.77 (citing docs. 80-3 at 26, 80-9 at 20, 80-32 at 9). The court is not fully convinced by this contention, because if the Plaintiffs are correct, no need would exist for their services, as the average consumer would be able to install and connect the equipment at issue. Still, because this court must construe the facts in the light most favorable to the Plaintiffs, and testimony would aid the court in evaluating this issue, the court finds this factor weighs against a finding at this juncture that the Plaintiffs are independent contractors.

### 5.  *Permanency and Duration*

The court must also consider the "degree of permanency and duration of the working relationship." *Scantland,* 721 F.3d at 1312. DIRECTV contends that the Plaintiffs "were under no prohibition from offering their services to whomever they felt would be most profitable to them," and were able to change between subcontracting companies without notifying DIRECTV. Doc. 79 at 33. In addition, DIRECTV notes that the Plaintiffs performed other, non-installation work while employed as technicians. *Id.* at 34.

The Plaintiffs dispute the contention that they could offer their services freely, noting that an exclusivity provision of DIRECTV's agreements with subcontracting companies prohibited them from performing installations for DIRECTV's competitors. Doc. 94 at 34. The Plaintiffs add that they "worked full-

time installing DIRECTV systems" with durations of employment spanning "months, or, more typically, years." *Id.* at 33. However, the existence of an exclusivity provision or the fact that the Plaintiffs stayed with DIRECTV for months or years does not mean that the Plaintiffs were prohibited from leaving DIRECTV for another entity if they were so inclined. Accordingly, this factor is, at best, neutral for the Plaintiffs.

### 6. *Integral Part of Alleged Employer's Business*

DIRECTV contends that this factor is neutral because the subcontracting companies that engaged the Plaintiffs were not beholden to assign them work, and could terminate the Plaintiffs at will or assign their work to other technicians. Doc. 79 at 34 (citing *Roslov*, 218 F. Supp. 3d at 975; *Likes v. DHL Exp., Inc.*, No. 208-CV-00428-AKK, 2012 WL 8499732, at *10 (N.D. Ala. Mar. 7, 2012)). However, in *Likes*, this court did not hold that at-will employment status meant that the plaintiffs' work was not integral, but only that this factor was not solely "dispositive of the alleged joint employer status at issue here." *Likes*, 2012 WL 8499732 at *10. DIRECTV's reliance on *Roslov* similarly misses the mark, as it held only that this factor alone could not tip the scales of the overall analysis. *Roslov*, 218 F. Supp. 3d at 975 (internal citations omitted).

In contrast, the Plaintiffs have presented evidence to support their contention that their work is integral to DIRECTV's business, stating that, for example, "[t]he

installation of [DIRECTV's] satellite systems [is] required for consumers to receive television service." Doc. 94 at 17. Indeed, as the Fourth Circuit aptly put it in finding for other technicians on this issue, "absent Plaintiffs' work installing and repairing DIRECTV satellite systems, DIRECTV would be unable to convey its product to consumers." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 775 (4th Cir. 2017). Accordingly, this factor weighs against a finding of independent contractor status as a matter of law.

### 7.  *Weighing the Factors*

To sum up, all but one or two of the six *Scantland* factors weigh against the court finding, as a matter of law, that the Plaintiffs are independent contractors. Based on the record, there are clearly disputes of material fact surrounding many of the factors. Accordingly, DIRECTV's first motion for summary judgment, doc. 78, is due to be denied.

### B. DIRECTV's Alleged Joint Employer Status

Next, DIRECTV contends that, even assuming the Plaintiffs are employees of the subcontracting companies, DIRECTV was not their joint employer. Doc. 82. "A single individual may stand in relation of an employee to two or more employers at the same time under the [FLSA] . . . since there is nothing in the act which prevents an individual employed by one employer from also entering into an employment relationship with a different employer." 29 C.F.R. § 791.2(a). If the

facts show that an employee is jointly employed, then his work for the entire workweek is considered as one employment under the FLSA. *Id.* "In this event, all joint employers are responsible, both individually and jointly, for compliance with the applicable provisions of the [FLSA], including overtime provisions, with respect to the entire employment for the particular workweek." *Id.*

In this circuit, the "economics realities" test is utilized to analyze "the relationship between the plaintiff and the putative employer . . . to determine whether the surrounding circumstances show that the plaintiff is economically dependent on the putative employer." *Tafalla v. All Florida Dialysis Services, Inc.*, No. 07-80396, 2009 WL 151159 at *5 (S.D. Fla. Jan. 21, 2009); *see Aimable v. Long and Scott Farms,* 20 F.3d 434, 439 (11th Cir.1994). Economic dependency is contingent on eight factors: (1) the nature and degree of the alleged joint employer's control over the employees; (2) the degree of supervision over work, either direct or indirect; (3) the alleged joint employer's right, directly or indirectly, to hire, fire, or modify the employees' employment conditions; (4) the power to determine the employees' pay rates or methods of payment; (5) the alleged joint employer's preparation of payroll and payment of the employees' wages; (6) the ownership of the facilities where the work occurred; (7) the employees' performance of work integral to the alleged joint employer's business;

and (8) the alleged joint employer's relative investments in equipment and facilities. *Antenor*, 88 F.3d at 932; *Tafalla*, 2009 WL 151159 at *5.

No one factor is determinative. Rather, in analyzing the eight factors, "[t]he focus of each inquiry . . . must be on each employment relationship as it exists between the [employee] and the party asserted to be a joint employer." *Antenor*, 88 F.3d at 932. Furthermore, the weight of each factor depends on the light it sheds on the employee's economic dependence, or lack thereof, on the alleged employer. *Id.* "The absence of evidence on any one or more of the criteria listed does not preclude a finding that an . . . [alleged] employer was a joint employer along with the [actual employer]." *Id.* at 933. Ultimately, the existence of a joint employment relationship depends on "the 'economic reality' of all the circumstances." *Id.* at 932.

As discussed *supra* at III.A, disputes of material fact exist concerning control, investment in materials and facilities, and whether the Plaintiffs' work was integral. The court addresses the remaining five factors in turn.

### 1. *Degree of Supervision*

DIRECTV contends it did not supervise the Plaintiffs. Doc. 82 at 28-29. The Plaintiffs assert that DIRECTV monitored information such as their arrival and departure times, work performance metrics, and customer feedback. Doc. 95 at 8-11. DIRECTV provided the information it collected to subcontracting companies

to inform them when technicians were not on time to jobs, *id.* at 9, to notify subcontracting company supervisors of technicians that failed to meet DIRECTV's performance metrics, *id.* at 10, 12, and to discuss removing deficient technicians from performing work, *id.* at 12. These alleged facts, which the court must accept as true, weigh against finding as a matter of law that DIRECTV did not exercise a sufficient degree of supervision to qualify as a joint employer.

## 2.  *Right to Hire, Fire, or Modify Conditions of Employment*

DIRECTV asserts that only the subcontracting companies had the right to hire or fire Plaintiffs, or to modify the conditions of their employment. Doc. 82 at 29-30. The Plaintiffs contend that DIRECTV retained the right to terminate the subcontractor status of technicians at its sole discretion. Doc. 95 at 15 (citing doc. 80-118 at 27). The Plaintiffs also note that DIRECTV could stop routing any work orders to an individual technician, either at its own discretion or by making recommendations to subcontracting companies. Doc. 95 at 16. Accordingly, these disputed facts also preclude a finding, as a matter of law, that DIRECTV had no involvement in the modification of the conditions of the Plaintiffs' employment.

## 3.  *Determination of Pay Rates or Methods of Payment*

DIRECTV contends that the subcontracting companies determined how and how much to pay the Plaintiffs. Doc. 82 at 31. The Plaintiffs contend that, because DIRECTV set the rates at which it paid subcontracting companies under a

16

piece rate pay system and issued chargebacks to subcontracting companies for poor performance by technicians, it had the practical effect of controlling the Plaintiffs' pay rates. Doc. 95 at 13-15. This argument is unavailing. *See Tafalla*, 2009 WL 151159 at *7 (noting that a hospital does not control subcontractor's pay merely because the contractor's decision to compensate subcontractor might be influenced by hospital's compensation scheme); *Roslov*, 218 F. Supp. 3d at 947 (holding that DIRECTV's payment of subcontracting company was "no different than any other contractor relationship, which is not the control contemplated by the FLSA"). Accordingly, this factor weighs against finding joint employment.

### 4. *Preparation of Payroll and Payment of Wages*

DIRECTV contends that the Plaintiffs were paid by the subcontracting companies, and that it did not maintain or prepare payroll records for subcontracting technicians. Doc. 82 at 33-34. The Plaintiffs argue that the subcontracting companies paid them based on when work order items were closed on Siebel, doc. 95 at 17, but cite no authority to support the proposition that this is equivalent to DIRECTV preparing their payrolls directly. Accordingly, this factor weighs against finding joint employment.

### 5. *Ownership of Facilities Where Work Occurred*

DIRECTV argues that the Plaintiffs' worksites are their vehicles, which they provided themselves. Doc. 82 at 34. Moreover, the Plaintiffs retrieved any

additional equipment necessary from facilities owned by subcontracting companies, not DIRECTV, and only went to DIRECTV-owned offices "irregularly." *Id.* The Plaintiffs contend that their worksites are not their vehicles, but the homes of DIRECTV's customers. Doc. 95 at 17. They make much of the fact that DIRECTV owns Siebel and the equipment being installed, *id.* at 17-18, but these are not the facilities where work occurred. Moreover, by the Plaintiffs' own admission, equipment was "typically" picked up from DIRECTV by the managers of subcontractor companies, and only "sometimes" picked up directly by the Plaintiffs. *Id.* at 18. Accordingly, this factor weighs against finding joint employment.

6. *Balancing the Factors*

Making a determination of joint employer status would require this court to decide the disputed issues of fact described above, which it is, of course, prohibited from doing on a motion for summary judgment. Accordingly, the second motion for summary judgment, doc. 81, is also due to be denied.

## C. Alleged Qualification for the § 7(i) Exemption

DIRECTV argues next that, even if the court finds against it on the employer issue, it is due to prevail under the 29 U.S.C. § 207(i) exemption of the FLSA, which provides that:

> No employer shall be deemed to have violated [the overtime provisions of the Act] by employing any employee of a retail or

18

> service establishment for a workweek in excess of [40 hours], if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half of his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i). "[T]he employer . . . bears the burden of proving the applicability of a FLSA exception by clear and affirmative evidence." *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001) (internal quotation marks omitted).

### 1. *Retail or Service Establishment*

In order to meet the definition of a retail or service establishment, DIRECTV must show (1) that it is an establishment in an industry that has a "retail concept," 29 C.F.R. § 779.316, (2) that 75% of its annual dollar volume comes from sales of goods or services recognized as retail in nature in that particular industry, 29 C.F.R. § 322, and (3) that 75% of its annual dollar volume comes from sales of goods or services not for resale, 29 C.F.R. § 779.411.

The Plaintiffs dispute the second and third factors, arguing that DIRECTV's evidence of its annual dollar volume is insufficient because it concerns DIRECTV's enterprise as a whole, not the revenue generated by DIRECTV's installation technicians in particular. Doc. 96 at 23 (citing *Brennan v. Yellowstone Park Lines, Inc.*, 478 F.2d 285, 289-90 (10th Cir. 1973)). However, the Plaintiffs' reliance is misplaced, as *Brennan* dealt with a number of businesses of different

types, such as hotels and restaurants, "located at widely separated places," 478 F.2d at 287, not the various subdivisions of a nationally-based company.

Additionally, the Plaintiffs contend that the testimony of "the highest ranking officers of two of DIRECTV's Home Services Providers" that they did not consider their work to be retail in nature creates a factual dispute over whether installation services are regarded as retail services within the industry. Doc. 96 at 24. However, the witnesses testified only about their own businesses, which creates no dispute as to DIRECTV's retail status. *See Arnold v. DirecTV, LLC*, No. 4:10-CV-352 JAR, 2017 WL 1196428 at *9 (E.D. Mo. Mar. 31, 2017). Accordingly, the court finds, as a matter of law, that DIRECTV is a retail or service establishment.

### 2. *Regular Rate of Pay in Excess of One and One-Half Times Minimum Wage*

DIRECTV contends that, in the absence of a detailed record of the Plaintiffs' weekly working hours, the testimony of the Plaintiffs as to their hours is sufficient to establish that they were paid more than one and one-half times the applicable minimum wage. Doc. 84 at 23-24 (citing *Kuntsmann v. Aaron Rents, Inc.*, 903 F. Supp. 2d 1258 (N.D. Ala. 2012)). The court agrees, and is not convinced by the Plaintiffs' contention that an employer who fails to track its employees' actual weekly hours cannot rely on the employees' testimony to meet this element of the

§ 7(i) exception. *See* Doc. 96 at 30 (citing *Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d, 423, 445-45 (N.D. N.Y. 2014)).

Next, the Plaintiffs argue that chargebacks and other unreimbursed business expenses reduced their net pay below one and one-half times the minimum wage. Doc. 96 at 30-31. However, the Plaintiffs cite no authority that supports applying this proposition in the § 7(i) context. Accordingly, based on this record, the court finds, as a matter of law, that the Plaintiffs were paid more than one and one-half times the minimum wage.

### 3. *Commissions*

The final factor considers whether the employees received more than half of their pay from commissions. DIRECTV contends that the piece rate payment method used to pay the Plaintiffs is analogous to the "flag hours" that the Eleventh Circuit held to constitute commissions in *Klindinst v. Swift Investments, Inc*. Doc. 84 at 18-20 (citing 260 F.3d 1251, 1254, 1256 (11th Cir. 2001)). As further evidence that the Plaintiffs' pay constitutes commissions, DIRECTV notes that the Plaintiffs could earn additional pay for a work order if they installed multiple satellite receivers, performed custom work, or sold the DIRECTV Protection Plan. Doc. 84 at 20-21.

"[T]o constitute a commission under 29 U.S.C. § 207(i), the employer must establish some proportionality between the compensation to the employees and the

amount charged to the customer." *Wilks v. Pep Boys*, 278 F. App'x 488, 489 (6th Cir. 2008). Here, customers pay nothing for the satellite cable installation the Plaintiffs perform. Doc. 96 at 28. While DIRECTV contends that the requisite proportionality is established by the fact that "the installation is one step in the retail transaction of selling DIRECTV services and is offset by the revenue DIRECTV receives for monthly subscriptions and other fees paid by the customer," doc. 104 at 7-8, this is insufficient to meet its burden of showing proportionality by clear and affirmative evidence to meet this prong of the test.

Accordingly, the court cannot find, as a matter of law, that DIRECTV qualifies for the § 7(i) exemption. As a result, the third motion for summary judgment, doc. 83, is also due to be denied.

### D. The Plaintiffs Have Failed to Produce Sufficient Evidence to Support Their Damages

Finally, DIRECTV argues that it is entitled to summary judgment due to the Plaintiffs' failure to produce competent evidence of their damages or show that DIRECTV had knowledge of their alleged unpaid work.[5] Doc. 86. The court agrees.

---

[5] DIRECTV alternatively argues that the Plaintiffs' claims should be limited to the two year statute of limitations because they cannot establish a willful violation of the FLSA. Doc. 86 at 28-30. As the court finds the issue of damages sufficient to resolve this motion, it need not consider willfulness.

1. *Plaintiffs' Burden of Proof on Damages*

To meet their burden of proof with regard to damages, the Plaintiffs must "prove[] that [they have] in fact performed work for which [they were] improperly compensated and . . . produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)). "Summary judgment is appropriate where [the Plaintiffs] have no expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages." *Weinberg v. Whatcom Cty.*, 241 F.3d 746, 751 (9th Cir. 2001) (internal citations and quotation marks omitted); *see Jackson v. Corr. Corp. of Am.*, 606 F. App'x 945, 952 (11th Cir. 2015) (upholding summary judgment against plaintiff who failed to meet evidentiary burden on damages in a FLSA case); *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1315 (11th Cir. 2007) (recognizing that, in some circumstances, summary judgment may be appropriate if plaintiffs fail to prove their damages in a FLSA case).

The Plaintiffs contend that they have met this burden by "provid[ing] detailed calculation of the range of damages [they are] seeking and explaining each step of the math used" to "harmonize[] [their] best estimate[s] of the wages [they] received, the hours [they] worked, the number of weeks [they] worked, and

23

incorporate[] the impact of chargebacks and unreimbursed business expenses." Doc. 99 at 6-7. However, this fails to explain the wide-ranging discrepancies between the Plaintiffs' estimations of their own damages across their testimony in Initial Disclosures and Interrogatory Responses, *see* doc. 86 at 18, 22-23, or the fact that some of the Plaintiffs could not even explain how they came up with their damage numbers, *id.* at 8-9, 12-13.

Perhaps because the Plaintiffs recognize the inadequacy of their submission, they assert that their testimony will be "further corroborated" by "detailed information DIRECTV maintained in its Siebel system" and "their work schedules maintained by DIRECTV." Doc. 99 at 14. But this contention does not explain why the Plaintiffs, who have the burden on this issue, cannot present the evidence at this juncture, what specific records they will use, or why they failed to designate any experts to testify to the calculation of damages. The court recognizes that "[a]lthough a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation, '[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee.'" *Allen*, 495 F.3d at 1315 (quoting *Anderson*, 328 U.S. at 687) (some alterations in original). Still, this is not a case where the Plaintiffs are claiming that they cannot make their showing because of some conduct by the employer. *See id.* at 1315-18. Rather, the Plaintiffs are saying that

they will "further corroborate" their contentions at trial. Doc. 99 at 14. But the Plaintiffs cannot meet their evidentiary burden with a bare assertion that they possess evidence that will support their damages claims—they must actually show the documents or identify the expert witnesses that will allow the jury to reasonably calculate their damages.

As this court wrote recently in another case,

Ultimately, [the Plaintiffs] bear[] the burden of proving that [they] worked overtime without compensation. *See Reich*, 28 F.3d at 1081. Simply stating that a review of the timesheets at a later date will show the claimed overtime hours is insufficient for [the Plaintiffs] to meet [their] burden. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir.   1989)) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."). While the FLSA is not intended to "penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work," the employee must still "prove[] that he has in fact performed work for which he was improperly compensated and . . . produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946).

*Mooren v. Sys. Studies & Simulation, Inc.*, No. 5:12-CV-00230-AKK, 2017 WL 3581727 at *7 (N.D. Ala. Aug. 18, 2017). Indeed, as the Supreme Court has made clear, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The Plaintiffs have failed to make a sufficient showing here. In fact, the only actual evidence in support of their damages that the Plaintiffs have put forward, i.e. the sworn declaration of Crystal Cook, one of the attorneys representing them, doc. 98-7, is inadmissible. Cook states that she has "personal knowledge" based on "a series of Microsoft Excel spreadsheets" of information from Siebel that DIRECTV produced, which "staff members in [her] firm" summarized using a methodology that "[o]ne of DIRECTV's management witnesses" described. *Id.* at 1-2, 6-7.

"[W]hen an attorney makes statements under penalty of perjury in an affidavit or an affirmation, the statements do constitute part of the evidentiary record." *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009). However, "[d]eclarations by attorneys are sufficient [to satisfy Rule 56(c)(4)] only if the facts stated are matters of which the attorney has knowledge, such as matters occurring during the course of the lawsuit, such as authenticity of a deposition transcript." *Clark v. Cty. of Tulare*, 755 F. Supp. 2d 1075, 1084 (E.D. Cal. 2010). For example, in *Estremera v. U.S.*, the Seventh Circuit found an attorney affidavit lacked a basis in personal knowledge where it "was based on the attorney's review of the relevant documents and his interviews with witnesses who had personal knowledge." 442

F.3d 580, 584 (7th Cir. 2006). "Secondhand knowledge acquired in this way cannot, without more, establish that material facts are in dispute." *Id.*

Similarly, Cook's declaration is, by her own admission, based solely on review of case documents and the deposition testimony of a single witness. Doc. 98-7 at 1-2, 6-7. Moreover, Cook does not even claim to have personally reviewed the relevant documents, but rather relied on summaries of those documents that others prepared. *Id.* at 2. Thus, based on the contents of her own declaration, it lacks the basis in personal knowledge necessary to satisfy Rule 56(c)(4) or Rule 56(e).

Alternatively, even if Cook's declaration was based on personal knowledge, the court cannot consider her testimony because the Plaintiffs failed to disclose Cook as a witness in violation of Rules 26(a)(1)(A) and 26(e). Doc. 105 at 3 n.1. Rule 37(c)(1) requires that the court preclude the Plaintiffs from using the declaration to supply evidence on this motion "unless the failure was substantially justified or is harmless." *See Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1250 (10th Cir. 2013) (citations and quotation marks omitted); *Salgado v. General Motors Corp.*, 150 F.3d 755, 742 (7th Cir. 1998) ("[T]he district court acted well within its discretion when it decided to impose the sanction of precluding the witness from testifying . . . [because] the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of

Rule 26(a) was either justified or harmless."). The Plaintiffs have provided no justification for this omission, let alone a substantial one.

To sum up, the Plaintiffs have failed to produce sufficient evidence from which a jury could draw a just and reasonable inference as to the amount and extent of their damages. For this reason alone, DIRECTV's motion for summary judgment is due to be granted.

### 2. *Whether DIRECTV Knew or Should Have Known the Plaintiffs Were Performing Overtime Work*

Even if the Plaintiffs had provided competent evidence of their damages, to prevail, the Plaintiffs must also show that DIRECTV "knew or should have known of their overtime work." *Allen*, 495 F.3d at 1314-15. "In reviewing the extent of an employer's awareness, a court 'need only inquire whether the circumstances . . . were such that the employer either had knowledge [of overtime hours being worked] or else had 'the opportunity through reasonable diligence to acquire knowledge.'" *Reich v. Dep't of Conservation & Nat. Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994) (quoting *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969)) (alterations in original).

By the Plaintiffs own admission, they never informed DIRECTV of their wages or complained of unpaid overtime. Docs. 80-3 at 40, 80-4 at 51, 80-11 at 33, 80-13 at 24, 80-18 at 32, 80-30 at 27, 29, 80-35 at 62. Instead, they contend that DIRECTV had constructive knowledge for two reasons. First, they allege that the

records of work orders in Siebel establish DIRECTV's constructive knowledge of the Plaintiffs' unpaid overtime. Doc. 99 at 18-19. However, as DIRECTV points out—and the Plaintiffs do not challenge—Siebel "does not record the actual time worked by technicians, and does not always reflect the actual identity of the technician servicing an order or the status of that order." Doc. 86 at 25.[6] It is unrefuted that Siebel is not a timekeeping system, and that its logs of work orders "[are] not an accurate representation of which technicians actually performed which work orders and provide[] no information regarding the actu[al] time worked by any technician." *Id.* at 25-26.[7] Where, as here, the Plaintiffs do not dispute these contentions, imputing constructive knowledge to DIRECTV on the basis of Siebel's demonstrably inaccurate records would go far beyond this circuit's requirements of reasonable diligence. *See Reich*, 28 F.3d at 1082.

Second, the Plaintiffs allege that DIRECTV had constructive knowledge because DIRECTV "required that all independent contractor technicians be set on a typically six-day work schedule." Doc. 99 at 18. This contention is also unavailing, because the nature of the Plaintiffs' work is such that there is no direct

---

[6] To support this position, DIRECTV cites the deposition testimony of various Plaintiffs. *See* Doc. 86 at 25 n.47 & 48. A review of the cited pages shows that the Plaintiffs testified that technicians, including some Plaintiffs, worked under other technicians' identification numbers, a practice referred to as "ghosting," docs. 80-1 at 18, 80-20 at 11, 80-35 at 20, could trade work orders with other technicians, docs. 80-15 at 22, 80-23 at 27-28, 80-30 at 38, or could have work orders reassigned by supervisors, doc. 80-20 at 31.

[7] For example, some work orders are recorded in Siebel as taking only five to six seconds to complete. Doc. 105 at 8

correlation between the number of days worked per week and the number of hours worked per week. Depending on the number of work orders a technician receives each day and how long it takes to complete them,[8] a six-day workweek could be either over or under forty hours. Thus, without more, DIRECTV's knowledge of the typical workweek scheduling does not show that they should have known that the Plaintiffs worked overtime. Accordingly, for this reason as well, DIRECTV's motion is due to be granted.

## IV. CONCLUSION

For the reasons stated above, DIRECTV's first, second, and third motions for summary judgment, docs. 78, 81, 83, are due to be denied, and its fourth motion, doc. 85, is due to be granted.

**DONE** the 14th day of September, 2017.



**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[8] For example, Plaintiff Kris Battle testified that the length of individual jobs and the total number of hours he worked a week could vary based on the layout of a customer's home, whether he had the equipment he required, the amount of time required for customer education, and whether the home had been previously wired for DIRECTV, among other factors. Doc. 80-3 at 31, 35-36.